## CHENAULT'S ADMINISTRATORS *vs.* WALKER.

1. An action of debt against a sheriff for money had and received, may be revived against his administrator.

2. Money in the hands of a sheriff collected under execution, when not more than sufficient to satisfy the debt and lawful costs, is the money of the plaintiff in execution, and the extent of the sheriff's lien upon the fund, in case of a controversy, must be settled between him and the plaintiff.

3. When the money collected is not enough to satisfy the debt and lawful costs, and the sheriff retains more than his lawful fees, the defendant in execution cannot, after paying to the plaintiff the balance of his debt allowing the sum appropriated by the sheriff, recover from the sheriff the amount unlawfully retained by him.

ERROR to the Circuit Court of St. Clair.

Tried before the Hon. THOMAS A. WALKER.

This was an action of DEBT, brought by Walker against Chenault in his lifetime, and after his death revived against his administrators, the present plaintiffs in error. The suit was commenced 17th November, 1846.

The facts of the case, as shown by the record, are these: The executors of Joel Chandler, in 1844, recovered judgment in the Circuit Court of St. Clair against Walker, the plaintiff below, for the sum of $2987 $\frac{37}{100}$. A writ of *fi. fa.* issued upon this judgment in September, 1844, and came into the hands of Chenault, who was then sheriff of St. Clair. Under and by virtue of this *fi. fa.* Chenault levied upon and sold eight slaves belonging to Walker, for the sum of $2132 $\frac{75}{100}$. The amount of the bill of costs taxed by the clerk on this *fi. fa.*, was $33 $\frac{62}{100}$. Chenault returned the *fi. fa.* with his levy and sale of the slaves regularly endorsed, the gross amount of the sale amounting to said sum of $2132 $\frac{75}{100}$. A part of the return of the sheriff on said *fi. fa.* is in these words: "Sheriff's fees for victualing, clothing, and paying tax for eight negroes twelve months, and commission fees on $2132 $\frac{75}{100}$, $550.

          (Signed)          JOHN CHENAULT, Sheriff."

The averments of the declaration are predicated on these facts, and plaintiff sues for four fold the amount so charged and retained by Chenault, "for victualing, &c., the slaves,

and for commission fees," under the statute "for unlawfully demanding and receiving higher fees than are prescribed by law," contained in Clay's Dig. 238 § 9. The plaintiff concludes his declaration with the common *indebitatus* count for money had and received by defendant to his use.

Other *fi. fas.* were issued on the judgment in favor of Chandler's executors against Walker, between the return of the *fi. fa.* aforesaid, under which the slaves were sold, and October, 1845, under one of which another slave was levied on. These *fi. fas.* were all returned stayed by the order of plaintiffs; and in October, 1845, Chenault, as sheriff, was appointed by the Orphans' Court of St. Clair, administrator *de bonis non* with the will annexed, of the estate of Joel Chandler, deceased. In June, 1846, a *fi. fa.* issued on the judgment against Walker, which came to Chenault's hands as sheriff, on which he made this endorsement: "The within stayed till further orders; till there can be an estimate made on the estate. September 2, 1846.

(Signed) JOHN CHENAULT, Sheriff."

Chenault settled his administration on said estate after the date of this return on the *fi. fa.*, and before the commencement of this action, and was discharged; but he did not, on such settlement charge himself with any portion of the money collected of the plaintiff on the *fi. fa.* in September, 1844.

John Collins, who succeeded Chenault as administrator *de bonis non* of Joel Chandler, testified, that he had never sued out any execution on the judgment against Walker, for the balance due, and that there never had been any agreement for the satisfaction of such balance, that he knew of, until the final settlement of Chandler's estate in 1850; and that in that settlement Walker accounted to him, as administrator *de bonis non*, for said balance. Walker was one of the distributees, in right of his wife, of the estate of Joel Chandler, deceased.

The record of the final settlement of that estate in the Probate Court of St. Clair, in September, 1850, was introduced, showing the payment by Walker, in settlement with the administrator, Collins, of the balance due on the judgment. Objections were offered to the introduction of this record, but it will not be necessary to state them more particularly.

It was in proof that the slaves which were sold under the *fi. fa.* against Walker, and for victualing, &c., of whom the charge of $550, including commissions, was made by Chenault, were in his possession for more than twelve months previous to the sale, by virtue of an attachment against Walker.

On this evidence the court charged the jury:

That, if there was a balance due to the plaintiffs in the judgment in favor of the executors of Joel Chandler against Walker, the plaintiff in this action, after crediting the amount of the sales of the property levied upon by defendant's intestate at the commencement of this suit, then plaintiff could not recover; but that if they believed that plaintiff, Walker, had paid off and discharged the balance due upon said judgment before the commencement of this suit, then plaintiff was entitled to recover.

To this charge the defendants excepted, and asked the court to charge:

That, if the jury believed, that after the return term of the first execution, and before the commencement of this suit, defendant's intestate was appointed and duly qualified as administrator *de bonis non* of the estate of Joel Chandler, plaintiff cannot recover in this form of action. This charge the court refused, and defendants excepted.

The errors assigned are:

1. The revival of the action against the representatives of Chenault.

2. The charge given by the court, and the refusal to charge as requested.

S. F. RICE, for plaintiffs in error:

1. It is a principle of the common law, that when the cause of action founded on a misfeasance or a nonfeasance, arose *ex delicto*, the personal action died with the person; and, notwithstanding our statutes, this rule still holds with respect to the person by whom the injury was done. When the defendant in such action dies pending the suit, it cannot be revived against his administrators, although, if the plaintiff had died, it might have been revived in the name of his administrators. Coker, admr. v. Crozier, 5 Ala. 379; Nettles

v. Barnett, 8 Porter 186; Gent v. Gray, 29 Maine R. 462; Valentine v. Norton, 30 ib. 194.

2. But this action cannot be revived for another reason: It is an action brought to recover of a sheriff, the penalty of four fold, for fees illegally received by him. The sheriff died whilst the suit was pending. The statute does not authorize a recovery against his representatives, but especially declares, "he (the officer) shall be liable in damages to the party aggrieved." Clay's Dig. 238 § 9; Murphy's Admr. v. The Br. B'k. at Mobile, 5 Ala. 421; Logan, Admr. v. Barclay, 3 Ala. 361; Chenault v. Walker, 15 Ala. 605. In North Carolina, a statute authorizes suits for trespass to property to be revived against the representatives of the defendant; yet, the courts hold, that vindictive damages cannot be recovered against a representative, even under their statute. Ripley v. Miller, 11 Iredell's Law Rep. 247.

3. The statute (Clay's Dig. 238 § 9,) does not give the right to recover this penalty unconditionally to either "party" to the execution, but the right is restricted to "the party aggrieved." This phrase—"the party aggrieved"—has a legal meaning. It designates the party (either the plaintiff or defendant in the execution,) who has the legal right to the money which is illegally demanded, and received and retained by the officer; the legal right to demand it of the officer as soon as he receives it, and to enforce that demand instantly by a resort to the courts of law. The State v. Duncan, 9 Porter 260.

4. If the terms, "the party aggrieved," are construed in their legal sense, it is manifest that Walker was not "the party aggrieved" at the commencement of this suit by him. The execution against him in the hands of the officer was for $2987 $\frac{87}{100}$, besides interest, costs and commissions. The gross amount of the sales of his property under the execution was only $2132 $\frac{75}{100}$, which is fully set forth in the return of the officer on the execution. If the officer claimed and retained more for his fees than the law allowed him, out of the proceeds of this sale, the plaintiff in the execution was "the party aggrieved" by this unlawful act of the sheriff. The law itself made the proceeds of the sale a satisfaction of the execution *pro tanto*, and the law would not hold that

Walker, (the defendant in execution,) under these facts, could have sustained any injury.   Moore v. Barclay, 18 Ala. 672; Hughson v. Burr, 5 Strobhart's Eq. Rep. 147.

5. The money collected by the sheriff under the execution was less than the amount of the execution, and the defendant in the execution had no legal right to any part of it.   It was in the custody of the law.   Zurcher v. Magee, 2 Ala. 253.

6. Such was the state of the facts, as existing at the time this suit was commenced.   And it is evident, that upon such a state of facts, Walker had no legal right against the officer, which could be enforced in such an action as this.

7. But to obviate this insurmountable legal difficulty, Walker was allowed to prove that, long after the sales of the property under the execution, another execution issued, under which a slave was levied on, and that the proceedings under this levy were stayed by order of the plaintiff in the execution, and that long after the commencement of this suit, in 1850, by compromise and settlement, he arranged with Collins, administrator *de bonis non* of Chandler's estate, the balance which, until then, remained due on said execution. Walker was also allowed to read "from the records of the final settlement" of said Collins, as such administrator, with the Probate Court of St. Clair, sundry matters shown by the bill of exceptions; the plaintiffs in error duly excepting to each portion of this testimony.   This suit was commenced on the 14th October, 1846.   There is no plainer principle of law, than that which will not allow a plaintiff to establish his right to a recovery by proof of facts occurring subsequent to the commencement of his suit.   Butler v. Lee, 11 Ala. Rep. 885.

8. The legal proposition asserted by the charge of the court, is simply this:  A defendant in a judgment does not acquire a right of recovery against a sheriff who sells, under execution, property which yields less than the amount of the judgment, until "the amount of sales," (without deducting either costs or commissions therefrom,) is credited, and he, (the defendant in the judgment,) pays off "the balance due upon said judgment;" but if, "after crediting the amount of sales of the property levied upon," a balance remains due, and the defendant in the judgment pays off "the balance

due upon said judgment," he thereby and thereupon acquires a right to recover from the sheriff or his administrators! This charge does not refer to the jury the question, whether the sheriff acted properly or improperly, lawfully or unlawfully; whether he received or retained any fees legal or illegal; but the charge, conceding that he acted legally, and "crediting the amount of sales of the property levied upon" on the judgment, asserts that the sheriff is liable, merely because the defendant in the judgment paid off "the balance due upon said judgment." The charge not only violated the law, by allowing Walker credit for "the amount of the sales," without deducting therefrom the lawful costs and commissions, but in giving Walker a right of action against the sheriff merely because Walker had paid off a valid judgment against himself.

9. The only plausible pretext for holding Chenault liable, is founded on the facts shown by his return on the original execution. He never afterwards received any money on any of the executions subsequently issued; and if he is liable at all, it must be deduced from his receiving the $2132 $\frac{75}{100}$ as the gross proceeds of the sales on the original execution, and his claiming to retain out of that sum, the sum of $550, for "sheriff's fees for victualing, clothing and paying tax for eight negroes twelve months, and commission fees on $2132 $\frac{75}{100}$;" all of which is set forth in his return on the original execution. When this case was here at a former term, it was decided, that he was not liable on these facts for the statute penalty of four fold. Chenault v. Walker, 15 Ala. R. 605. Whether, if he had received for the performance of this service, "more than reasonable compensation," he was liable or not liable to Walker, was a question not decided, but left open when the case was here before. The last sentence in the opinion, shows that if he did receive "more than a reasonable compensation, he is liable to be sued for money had and received by him who is legally entitled to it."

The question then is open, and must now be decided, who was the person "legally entitled to it." Thompson v. Armstrong, 7 Ala. 256. Walker, the defendant in the judgment, was not "legally entitled to" any portion of the money received by sheriff Chenault—the $2132 $\frac{75}{100}$—it being a much

less sum than the execution debt. The sheriff having received this money by sales under execution, the defendant in the judgment was, *ipso facto,* discharged to the extent of the $2132 $\frac{75}{100}$, from the judgment and all further execution, although the sheriff might have retained the whole of it from the plaintiff in the judgment, and have never paid any of it to the plaintiff in the judgment. Cases aboved cited; Bondurant v. Burford, 1 Ala. 364; 18 ib. 672; Hughson v. Burr, 5 Strobhart's Equity Rep. 147. Inasmuch as Walker had no legal right to any portion of this $2132 $\frac{75}{100}$, he cannot sue in his own name for any portion of it, in a court of law. Branch B'k. at Montgomery v. Sydnor, 7 Ala. 308; Westmoreland v. Davis, 1 Ala. 299; Crow v. Boyd's Admr., 17 Ala. 51.

The $2132 $\frac{75}{100}$ received by the sheriff under the execution, was, in law, a partial payment of the execution, and the execution was thus far satisfied and extinguished; and if, instead of having the proper legal satisfaction allowed to him, he afterwards, with a knowledge of the amount of the sales, voluntarily paid or compromised with the plaintiff in the judgment, the whole of the judgment, he cannot, in his own name or otherwise, recover from the sheriff any part of what he thus voluntarily paid; nor can his voluntary payment invest him with a right to sue the sheriff for any part of the $2132 $\frac{75}{100}$. If a person, with a knowledge of the facts, voluntarily pays a demand unjustly made on him, though attempted to be enforced by legal proceedings, it will not be considered as paid by compulsion, and he cannot recover it back, or thereby acquire a legal right to sue for a partial payment made previously on the same demand. Mitchell v. Sanford, 11 Ala. 695, and cases there cited; 1 Esp. Rep. 279; 2 ib. 546–723; 5 Taunt. R. 147; 4 B. & C. Rep. 290; University v. Keller, 1 Ala. 406.

J. T. MORGAN, *contra:*

1. The defendants inquired into the particulars of the decree of the Orphans' Court, on cross-examination of witness, Collins, and this after they had objected to the introduction of the record, when offered by the plaintiff. No exception was taken at the time the evidence was offered, but after it

was admitted, the defendants offered to withdraw the proof
they had offered on the cross-examination of Collins. This
the court refused to allow, and the defendants excepted.
There was no surprise on the part of the defendants, but it
was a mere experiment, which turned to their disadvantage,
and they should be held to it.

2. Besides, the proof was relevant, to show that the agree-
ment between Hampton et al. executors of Chandler, and
Walker, the plaintiff, which is mentioned in one of the re-
turns of Chenault, upon a *fi. fa.*, that the *fi. fa.* should be
suspended until it could be ascertained what was due Walker
as a distributee or legatee of the estate of Joel Chandler,
deceased, was made upon a sufficient consideration, and that
it was an agreement perfect in its terms, but not certain as to
the amount which might be due either way, and that it was
an agreement made upon good faith, and one upon which
Walker might honestly rely. It is somewhat like the case
where the parties have agreed to a matter of set-off, which is
not reduced to certainty as to the amount before suit is
brought, but becomes certain by subsequent settlement. It
would still be a good set-off, and the evidence of a subsequent
settlement would be relevant and proper.

3. The other material question is, upon the charge given.
The record showed, that on the 4th November, 1844, the
judgment was credited with $1618 $\frac{50}{100}$, and all costs up to
that time. This was evidence about which there was no dis-
pute in point of fact, but the legal effect of which was to be
decided by the court. It was matter of record, and the court,
in deciding upon the legal effect of the evidence, considered
it presumptive against the sheriff, that $1618 $\frac{50}{100}$ was the
amount actually credited on the judgment, and that if the
plaintiff had paid the balance due upon the judgment before
the commencement of this action, he could recover. "The
balance due upon the judgment" was the balance due after
allowing the credit of $1618 $\frac{50}{100}$ on the judgment; and the
court properly held the sheriff bound by the effect of his ad-
mission on the record to that effect. Could the jury have
been misled by this charge? The evidence conclusively
established that the sheriff had appropriated only $1618 $\frac{50}{100}$
to the judgment, and it would be an unjust criticism upon

the charge of the court to condemn it, because it would not be a correct proposition in every case. It was correct upon the facts of this case, and that was sufficient.

4. The court did not undertake to fix the amount of the recovery. The charge upon that point was general, as to the mere right to recover. If the defendants wanted a more specific charge, they should have asked for it.

5. The charge refused asserts the proposition, that an administrator *de bonis non* has no right to a judgment in favor of the administrator in chief, when the administrator *de bonis non* was appointed prior to the act of 1846. It is inconceivable how the plaintiff's right to recover "in this form of action," could depend upon the fact, that Chenault was or was not the administrator *de bonis non* of the estate of Chandler, deceased.

6. As to conclusiveness of sheriff's return, see Clark v. Gary, 11 Ala. Rep. 102; Haynes v. Wheat & Ferrell, 9 ib. 246.

7. The return of the sheriff makes an illegal appropriation of money to his own use, and is so far a breach of duty, and a breach of his bond. If he had taken all the money collected for fees, the case would not have been stronger. The plaintiff could have appropriated the money in the sheriff's hands to the satisfaction of his debt, but he may leave that matter to the defendant if he choose. The defendant may compel the sheriff to pay it to the debt, or he may sue for it; and if the plaintiff chooses to consider it as no satisfaction, and sues out an execution, the defendant is remitted to his rights against the sheriff. Commonwealth, use of Clark v. Williams, 4 Littell 335.

8. If the defendant, treating the return of the sheriff as conclusive, pay off the balance of the debt, the sheriff is estopped from setting up the rights of the plaintiff in execution. How can he insist upon a right which the plaintiff himself could not set up? Meriam v. Armstrong, 22 Vert. 26.

9. Whose money has Chenault in his hands? The plaintiff in the execution has abandoned his right to it, if he ever recognized it. He had the right to abandon it; at all events, as against the sheriff, who is only the agent of the law to collect the money, and the money in his hands belongs to the

defendant, whenever the plaintiff is satisfied. If this were not the law, the defendant could have no redress, if the sheriff were to collect more than is due upon an execution; or when the defendant, while the money is in the hands of the sheriff, on motion, has a credit entered upon the execution, not appearing on the record.

PHELAN, J.—When this case was here before, (15 Ala. 605,) it was decided, that the facts of the case would not authorize an action under the statute for four fold the amount of the fees which had been charged and taken by the sheriff. See that decision.

We can treat it now only as an ordinary action of debt by Walker against Chenault, for money had and received. Such being its character, the right to revive against Chenault's representatives, admits of no controversy.

The main question in the case may be put thus: Can a defendant, whose property has been sold under execution, and when the sheriff appropriates to himself, out of the money collected, fees to a greater amount than he is allowed by law, recover the excess so taken over and above the lawful fees, in an action for money had and received against the sheriff, when the money so collected is not more than sufficient to satisfy debt and lawful costs?

It is necessary here to ascertain to whom money in a sheriff's hands, which has been collected under execution, properly belongs. Is it the money of the plaintiff, or of the defendant? or does it remain in an uncertain state as to its true owner, which uncertainty is to be determined by some act of the sheriff, as to the manner in which he will appropriate it? The money is the money of the plaintiff. Many well settled principles lead directly to this conclusion.

Even before a sale or the collection of money, a levy and seizure by the sheriff of property of the defendant sufficient to satisfy the judgment, discharges the defendant. Campbell v. Spence, 4 Ala. 543. A defendant is not even bound to look after his property, after it has been taken by the sheriff in execution. After that, the sheriff becomes the agent of the plaintiff, and will be responsible to him alone for its safe keeping. Settle this principle, and you settle the question.

If the sheriff is the agent of the plaintiff for the safe keeping of the property, and the law devolves upon him the duty to sell it, he of course becomes his agent to account to him for the proceeds of the property when sold. See Moore v. Barclay, 18 Ala. 672; Hughson v. Burr, 5 Strobhart's Eq. Rep. 147.

The money is sometimes said in such case to be in the custody of the law, but always as money of the plaintiff, or of some one standing in his shoes.

But it may be said the sheriff has a lien for his fees, and is authorized to retain them, when he pays over money to the plaintiff; and that if he retains more than is lawful, and the defendant has property, the plaintiff, rather than trouble himself in a contest with the sheriff about his fees, will only sue out another execution, when the money, deducting the fees claimed and retained by the sheriff, proves insufficient to satisfy his judgment. But he cannot lawfully do this; the defendant, if he be vigilant about his rights, as every man is bound to be, will not suffer it. If the sheriff proceeds to levy again, after he has sold property enough to pay the plaintiff his judgment, together with all lawful costs and charges, he can be prevented by the defendant by petition for a *supersedeas*. Thus the plaintiff can be compelled to adjust with the sheriff, the question of the lawfulness of fees claimed by him; and this shows, that the duty to do so devolves on the plaintiff, by the very nature of the relation existing between them. Hence, it appears, that when the amount collected will simply cover debt and costs, or falls under that amount, and the sheriff retains more costs than he is allowed by law, the money he so appropriates is the money of the plaintiff, and he must look after it, and the extent of the sheriff's lien upon the fund must be settled, in case of a controversy, between him and the plaintiff.

If, in the first instance, the sheriff sells the property of the defendant for more than will pay the debt and costs, in that case, it is true, the defendant is required to look after the surplus. But the right of the defendant to money in the sheriff's hands arising from a sale of his property never accrues, unless there is a surplus over and above the amount sufficient to pay debt and lawful costs. That was not the state of facts

here.  The money collected did not amount to enough to pay the debt itself, by nearly a thousand dollars.

It seems to have been supposed on the part of plaintiff below, that after the $2132 $\frac{75}{100}$ was received by the sheriff from the sale of his slaves, and after the sheriff claimed and appropriated $550 of this sum for keeping them, and even after this suit was instituted, he (the plaintiff,) might settle with or pay Chandler's executors the amount they claimed to be due, allowing the charge of $550, so appropriated by the plaintiff, to be deducted as a proper charge or lien upon the funds he had collected, and then recover back from the sheriff in this action the amount of that charge, or so much of it as was not lawful.

Such a conclusion will be found to conflict with two sound and well established rules of law.

In the first place, it conflicts with the rule which forbids the legal assignment of a mere chose in action.  The executors of Chandler could not transfer to Walker the right to sue Chenault in his own name, for money had and received by Chenault to their use, if the transfer were made in the most direct and formal manner.  But here there is no formal transfer; and it is only argued that a payment by Walker to them of a certain amount claimed by them to be due on their judgment, not counting the money unlawfully retained by Chenault as fees, as any payment to them, will enable Walker to go upon Chenault for the money so unlawfully retained by him, by suit in his own name.  This is only an indirect attempt to get at that which cannot be done directly, the transfer or assignment of their right to sue.  Br. B'k. v. Sydnor, 7 Ala. 308.

In the second place, it conflicts with the rule that a man cannot recover on a cause of action which accrues after suit brought.  The cause of action, if any, which accrued to Walker from this settlement with Chandler's representatives, accrued at the date of that settlement, which is shown by the record to have taken place in 1850, several years after this suit was instituted.

It appears, that Chenault became the administrator *de bonis non* of Chandler's estate before the suit was brought, and so united in himself for a time the characters of plaintiff in that

judgment against Walker and the sheriff, who retained in his hands the illegal fees. That will not affect the principles we have been considering. No settlement is shown to have been made between him and Walker, while he was administrator *de bonis non;* and the argument in support of Walker's right to sue, even unsound as it is, is all based upon the idea of a settlement and payment of the whole demand, illegal fees included, by Walker to Chandler's representatives. Had he settled with Chenault at the time the latter was administrator *de bonis non*, and paid these fees the second time, his right to recover them back would have been forbid upon another principle still, viz: the voluntary payment of money to another with a knowledge of all the facts of the case. 11 Ala. 695.

The charge of the court says: "If there was a balance due to Chandler's executors by Walker, after crediting the amount of the sales of the property levied on by Chenault, at the commencement of this suit, then plaintiff cannot recover." This was a correct proposition. But the court adds: "But if the jury believe that plaintiff (Walker) had paid off and discharged the balance due on the judgment before the commencement of this suit, the plaintiff was entitled to recover."

The latter clause of this charge does not correspond, it will be readily seen, with the views we have expressed, bearing in mind the facts of the case, that the money collected in the first instance by the sheriff under the levy and sale, was not sufficient to satisfy even the debt, without the costs. In such a case, the money collected is the money of the plaintiff in execution, subject to the sheriff's lien for his lawful fees and charges; and the duty devolves on the plaintiff to see that no more of it is retained or appropriated by the sheriff than he is lawfully entitled to. And if the defendant does not look to his interests to see that this is done, but chooses to go on and settle with the plaintiff, without compelling him to settle with the sheriff, he cannot thereby acquire a right to sue the sheriff in his own name for the illegal fees, as money had and received to his use, in virtue of the payment made by him to the plaintiff in the judgment, as this would be in effect to authorize the legal assignment of a chose in action.

As this point must be decisive of the case, now and here-after, we deem it unnecessary to notice the charge requested by the defendant below, which the court refused.

Let the judgment be reversed, and the cause remanded.

CHILTON, C. J., did not sit in this cause, having been of counsel before his election to the bench.