# REPORTS

OF

# CASES ARGUED AND DETERMINED,

## JANUARY TERM, 1843.

---

## CAMPBELL, use, &c. v. SPENCE et al.

1. The *lien* created bv a judgment on lands, is co-extensive with the State, but a *bona fide* purchaser under a *fieri facias*, issued on a junior judgment would be protected.

2. Where the execution is superseded by the suing out a writ of error and giving bond with surety, the *lien* of the judgment is discharged.

3. The execution of a forthcoming bond, or bond to try the right of property, does not impair the *lien* of the judgment.

4. A levy and seizure by the sheriff of goods sufficient to satisfy the execution will as it respects the defendant in execution, be a satisfaction, although the goods be wasted by the sheriff.

5. When a levy is made on property sufficient to satisfy the execution, and the plaintiff directs the sheriff to leave it with the defendant on his promise to have it forthcoming on the day of sale, and it is not so delivered, such levy will be regarded as a satisfaction of the execution as it respects junior judgment creditors.

6. A *levy and sale* under a senior execution, will be considered a satisfaction as it respects a junior execution subsequently levied on other property of the defendent, although the sheriff may make a misapplication of the money, and the plaintiff in the senior execution will be remitted to his claim against the sheriff.

Error to the Circuit Court of Talladega.

This was a motion by the plaintiff against the defendant, sheriff of Talladega, for failing to pay over money on an execution against one Chandler and William H. Moore.

The defendant in error having realized a sum of money by

the sale of some lands of Moore, by his return on several exe-cutions, brought the money into Court, in discharge of the eldest *liens*, and this motion was made for the purpose of ascertaining that fact.

The Court rendered judgment in favor of the sheriff on an agreed case, from which it appears that the judgment of the plaintiff was obtained on the 16th November, 1841, against Chandler and Moore, for $512 78. A *fi. fa.* issued on this judgment, and came to the hands of Griffin, the predecessor of Spence, who made no levy, but turned it over to his successor, the defendant in error, who levied the same, with sundry other executions, on lands of Moore, which, at the sale, yielded the sum of $2,442.

At the August term, 1841, of the County Court of Madison, the Huntsville Bank recovered a judgment against the defendant, Moore, and others for $575, and execution thereon, which was received by Griffin, and levied on two slaves, sufficient in value for its satisfaction, and returned by him not sold for want of time. An alias issued thereon, and was received by Spence, (the former levy not being 'indorsed thereon,) by whom it was levied on two slaves of sufficient value to satisfy the execution, but it does not appear that the slaves were sold.

At the same term of Madison County Court the Bank obtained another judgment against Moore for $3,000 besides damages; upon which a *fi. fa.* was issued, and came to the hands of Griffin, by whom it was levied on ten negroes, the property of Moore, of sufficient value to satisfy the execution, and returned not sold for want of time. An alias issued on the judgment, without notice of the former levy, and came to the hands of Spence, by whom it was levied on certain negroes of value sufficient to satisfy the execution. The alias execution was placed in the sheriff's hands by one Jordan, the son-in-law of Moore, at whose instance the levy was made—the negroes were not present, and by the direction of Jordan were left in Moore's possession, on the promise of Jordan to have them forthcoming on the day of sale. The slaves never came to the sheriff's hands, and were not produced at the day of sale. The indorsement of the levy was afterwards erased by Spence.

On the 12th May, 1841, B. Bradford obtained a judgment in Talladega Circuit Court, against Moore, for $6,679 92; a *fi. fa.* issued thereon, and was delivered to the sheriff, Griffin, but before the return day thereof was superseded, Moore suing out a writ and executing bond with surety to obtain a writ of error to the January term, 1842, of the Supreme Court, at which term the judgment was affirmed; a *fi. fa.* was issued thereon and placed in the hands of Griffin, by whom it was handed over to Spence, his successor, and by him levied on the same lands on which the plaintiff's execution was levied.

The Branch Bank of Montgomery obtained two judgments at the November term of the Montgomery Circuit Court, one on the 22d for $139, and the other on the 27th November, for $475, upon which executions were issued and came to Griffin's hands, who turned them over to Spence, by whom they were levied on the lands of Moore.

The State Bank recovered a judgment against Moore and others, on the 4th February, 1840, for $919 66. Three successive writs of *fi. fa.* issued thereon, and came to Griffin's hands, who levied the last on four slaves, and returned that three of the slaves were claimed by a third person, and bond given to try the title, but the claim bond was never returned. A fourth *fi. fa.* was received by Spence and levied on the land above mentioned.

The Branch Bank at Mobile recovered a judgment against Moore in the County Court of Moble, on the 6th December, 1841. A *fi. fa.* issued thereon, came to the hands of Spence, and was levied on the same land.

On the 20th January, 1842, one Anderson recovered a judgment against Moore and others, for $80 52, on which a *fi. fa.* issued, and came to the hands of Spence.

At the time Spence came into office, there were sundry writs of *fi. fa.* in the hands of Griffin, which were levied before the expiration of his term of service, and therefore not turned over to his successor, Spence, amounting in all to about the sum of $29,000, on which he had sold property to an amount exceding the sum of $24,000. The executions thus in his hands, on judgments older than that of the plaintiff, amounted to the sum of $23,888, the residue was the amount due on judgments junior to that of the plaintiff. In making the application of the

sum above mentioned of $24,000, the sheriff, Griffin, did not regard the date of the judgments, but satisfied executions which issued on judgments rendered subsequent to that of the plaintiff, leaving unsatisfied two which were issued on judgments older than that of the plaintiff, viz:

One in favor of Nicholas M. Marks, for $4,997, which was affirmed in the Supreme Court, at the June term, 1841—and one in favor of the Branch Bank at Mobile, rendered on the 28th June, 1841, for $2,476 60. It also appears that Griffin has in his hands ten or eleven slaves levied on by virtue of these executions.

Upon these facts the Court overruled the motion of the plaintiff for judgment, and gave judgment in favor of the sheriff—from which this writ of error is prosecuted. The error assigned is, that the Court erred in rendering judgment for the defendant upon the facts agreed.

Morris and Pryor, for plaintiff in error.

The judgment of the Bank at Huntsville, obtained in 1841, will not conflict with the right of the plaintiff in error to the money, because a levy was made on property sufficient to satisfy the judgment, and will be a satisfaction as against the present plaintiff. [4 Cowen, 417; 1 Brock. 166.]

The same remarks apply to the judgment for $3,000 in favor of the Bank, and in addition, as the property levied on was sufficient to satisfy the execution and was left in possession of the defendant by direction of the plaintiff, it is evidence of fraud, and will operate a full satisfaction of the execution.

The judgment of Bradford had lost its lien by the writ of error sued out to the Supreme Court, and supersedeas of the execution, or, at least, was suspended, and the liens of other judgments created in the interim, will have the preference. The condition of the writ of error bond, which is, *to pay and satisfy such judgment* as may be rendered in the appellate Court, shows that the judgment of the inferior is merged in the judgment of the appellate Court, as there cannot be two judgments for the same thing. [1 Brock. 166; 13 Johns. 533; 5 Wendell, 58; 3 Porter, 138; 4 Stew. and Por. 268.]

The lien of a judgment on lands is not absolute, but requires the levy of an execution to make it so. Thus, if two judg-

Campbell, use, &c. v. Spence et al.

ments be rendered on the same day, neither has the preferable lien; but if one judgment creditor take out execution and sell the land, a priority is gained by the vigilant creditor. [11 Johns. 228.]

The declaration made by Spence on the day of sale, cannot affect the liens on lands as they are fixed by law.

The executions in Griffin's hands, which were levied when he went out of office, amounted to about $29,000, on which he had sold property to the amount of about $24,000. Amongst these was the execution in favor of Marks. This judgment the Court must consider satisfied, because Griffin had abundant time to make the money. The Court will presume that the negroes levied on were sufficient to satisfy this execution, because it is not shown that they were insufficient, and because also, this Court must presume that Moore had sufficient personal property to satisfy this execution.

The judgment in favor of the Bank at Mobile, for $2,476, will be presumed to have been satisfied by a part of the $24,-000 collected by Griffin, as the judgments which were older than the present plaintiff's amounted to only $23,888, and the residue of the sum of $2900 was composed of junior judgments. But it does not appear that the executions composing this sum issued on judgments obtained in Talladega county, or if elsewhere, that they were levied on this land before the plaintiff's, which must have been the case to entitle them to a preference over it.

The sheriff, Griffin, seems to have applied the money in his hands without regard to the rights of the parties. When he does this, he takes upon himself the satisfaction of all the executions in his hands, and this Court will presume that the ten or eleven negroes in his hands are of value sufficient to satisfy all the executions.

CHILTON, contra. , Before Griffin went out of office he levied on the same land sold by Spence, his successor. If the levy authorizes him to sell, and avoid the sale made by Spence, his successor, then the purchase money obtained by Spence ought to go back to the purchaser. [5 Dana, 578.]

A lien on land means nothing more than the right which the party holding it has for the satisfaction of his demand out of

the land. The judgment does not divest the defendant of his title, nor does the levy. It is the sale and sheriff's deed which operates a divestiture of title. If then no right or title vests in the judgment creditor by virtue of the judgment, nor in the sheriff by virtue of his levy, how can Griffin, having no interest in the land, convey any title when his office has expired. The case is clearly distinguishable from a levy on personal property, by which the sheriff acquires a right to the chattel, He is not only authorized, but required to divest himself of it for the satisfaction of the demand.

There can be but one constitutional sheriff in each county. The sale of land and investiture of title by him, is an official act, and attaches to the office, not to the man. If, then, the office is transferred, does not the right immediately devolve upon the successor, and does not the security of the rights of parties require that ministeral acts of this character should be performed by sworn officers?

If the previous levy of Griffin avoids Spence's sale, then, as Spence prays the Court for aid in the proper appropriation of the funds, it would be competent for the Court to order a return of the money. A Court of Chancery would undoubtedly exercise this power, and no objection is perceived to its exercise by a Court of law.

The true doctrine appears to be that held in New York—that where land is sold under a junior judgment, the sale is good, but the proceeds go to the extinguishment of the oldest lien. [16 Johns. 287.]

ORMOND, J.—The decision of this case depends on the ascertainment of certain principles which may be thus stated: First—What is the extent of the lien created on lands by the rendition of a judgment?

In the case of Morris v. Hill, [3 Ala. Rep. 560,] we held that a judgment created a lien on real estate, but it was not then necessary to determine its extent, as the lands were situate in the county where the judgment was rendered. The conclusion there attained was derived from the intention of the Legislature, manifested in the different statutes, by which lands had been subjected to the discharge of judgments, and we can perceive no reason for confining the *lien*, which by operation

of law, is consequent upon the judgment, to the county in which the judgment is rendered.

In the case of judgments rendered by this Court, it would scarcely be questioned that the *lien* created thereby was co-extensive with the State. Yet we can perceive no reason why that effect should be accorded to these judgments which does not apply with equal force to the judgments of any other Court of record. In either case the *lien* and its extent must depend on the statute subjecting lands to the payment of judgments, by sale under execution, and the previous enactment on the same subject, giving the writ of *elegit*. As the lands of a judgment debtor, situate in any part of the State, may be sold to satisfy a judgment rendered in any county of the State, by the process of the Court rendering the judgment, that must be the extent of the *lien*.

The argument drawn from the inconvenience of a contrary doctrine, is quite persuasive of the view here taken. The *liens* created by the judgments of the United States Courts, must at least be as extensive as the jurisdiction of these Courts, and it would be inconsistent, if not absurd, that a judgment rendered in favor of a foreigner should operate more extensively and beneficially than one in favor of our own citizens.

The most plausible argument against this extension of the *lien* is the supposed necessity thereby cast on a purchaser of examining all the clerks' offices in the State, before he can purchase with safety. The answer to this objection is, that a purchaser from a defendant in execution may always protect himself by his covenants with the vendor, and a *bona fide* purchaser under a *fieri facias* upon a junior judgment, would be protected. In the language of the Court in the case of Den v. Hill, [1 Haywood, 72,] "were the law not so, it would be the most dangerous thing in the world to purchase land at an execution sale. Dormant judgments might be revived a long time afterwards, and the innocent vendee evicted without the possibility of ever regaining the purchase money." In such a case the *lien* of the elder judgment would be lost by the laches of the plaintiff.

Second—What effect upon the *lien* of the judgment has the superseding the execution by suing out a writ of error and giving bond with surety?

In the case of McRae and Augustin v. McLean, [3 Porter, 138,] it is assumed as a settled principle, that a writ of error and supersedeas discharges the *lien* of the judgment, and such after a deliberate examination is our opinion.

In the case of Wiswall v. Munroe, at the last term, we held, that where the judgment had been superseded on error to this Court, that the judgment of the inferior Court was merged in the judgment of this Court. It follows that the *lien* of the first judgment is lost, as that could not continue after the judgment on which it was founded had ceased to exist. Nor could any execution issue in such a case upon the first judgment. But where the right to issue execution is merely suspended, as in the case of forthcoming bonds, and bonds to try the right of property, no such consequences follow, and the *lien* of the judgment will continue. See the case of Land v. Hopkins, at the last term, in which it was held, that the right to give a delivery bond was a mere power to delay the collection of the debt, and was for the benefit of the defendant, and that after a forfeiture of the bond, the plaintiff may still sue out execution on the judgment if he elects to do so.

Third—What will amount to a satisfaction of an execution?

One of the judgments, supposed to have a *prior lien* to that of the plaintiff in error, was obtained by the Bank at Huntsville for $575 debt, and $9 22 damages. This judgment was prior in point of time to that of the plaintiff; an execution issued thereon, came to the hands of the former sheriff, Griffin, who levied it on two negroes sufficient in value to satisfy the execution, which he returned "not time to sell." An *alias fi. fa.* issued on the judgment, without any indorsement of the former levy, and came to the hands of a deputy of the new sheriff, (Spence,) by whom it was levied on two slaves of value sufficient to satisfy the execution, and was returned with the levy indorsed, and that he had appointed the first Monday in May for the sale.

There can be no doubt that a levy and seizure by the sheriff of property sufficient to satisfy the execution, will be a discharge to the defendant, though the goods be wasted by the sheriff. It is, however, said that this plea is personal to the defendant, whose goods are taken, and cannot be made by a co-defendant, because it is not an actual satisfaction. [Dyke v.

Mercer, 2 Shower's Rep. 394.] It does not appear that the slaves levied on have been sold, or that there has been a satisfaction in point of fact of the execution, although in law it must be so regarded, as it respects the defendant in execution, if the property has been actually seized by the sheriff. And although the Bank, (plaintiff in execution,) would have an undoubted right to hold the sheriff responsible on his levy, we cannot perceive on what principle the plaintiff in error could insist on its foregoing its *lien* on the land, and resorting to an action against the sheriff. From the case as stated on the record, we are of opinion that the judgment of the Bank has the superior *lien*.

The judgment, however, of the Bank, obtained at the same term of the Court, for $3,000, does not stand in the same predicament. In that case, as in the preceding, the *fi. fa.* came to the hands of Griffin, and was by him levied on a number of slaves, sufficient to pay the debt, and was also returned " not time to sell." An *alias* issued on the judgment, without any notice of the former levy, and was placed in the hands of Spence, by whom it was indorsed levied on a number of slaves of sufficient value to satisfy it, and that the first Monday in May was appointed for their sale. This levy was indorsed at the instance of one Jordan, who had purchased and obtained an assignment of the judgment, by whose directions the slaves were permitted to remain in the possession of Moore, the defendant, and who engaged to deliver them on the day appointed for the sale. The negroes were not present when the levy was made, and were not delivered, or ever came to the sheriff's hands.

It is not necessary now to consider what acts on the part of a plaintiff in execution, in giving delay and authorizing the defendant to retain property levied on, will render the execution *dormant*, and give a preference to executions issued on junior judgments, and levied on the same property. That such delay when unreasonable, will subject the property to sale under junior executions, appears to be well settled. In the case of Russell v. Gibbs, [5 Conn. 390,] the law was thus ruled, after an examination of all the New York and many English authorities. [See also Benjamin v. Smith, 4 Wendell, 332.]

In this case, a levy was made on property sufficient to satisfy the execution—it is left in the possession of the defendant

in execution, the father-in-law of the assignee of the judgment, on his promise to have it forthcoming on the day appointed for the sale, it is not produced or delivered, and must be regarded, as it respects other judgment creditors, a satisfaction. If the conduct of Jordan is not absolutely fraudulent, its direct tendency is to aid the defendant in the commission of a fraud upon a portion of his creditors, and he must abide the consequences of his own act.

It appears further that Griffin, the former sheriff, had, when his term expired, executions in his hands to the amount of $29,000, by virtue of which he had levied and sold property to the amount of $24,000, and that the executions in his hands on judgments older in date than that of the plaintiff in error, amounted to something less than $24,000—the residue being the amount due on judgments subsequent to that of the plaintiff. That Griffin, in applying this money to the satisfaction of the executions in his hands, did not regard the date of the judgments, leaving two executions unsatisfied which were older in date than that of the plaintiff in error; one in favor of N. M. Marks, for about $5,000, and one in favor of the Branch Bank at Mobile, for $2,476. These two executions had been levied on the land sold by Spence, and on some slaves which Griffin had in his hands remaining unsold.

From this statement it appears a levy and sale was made under these executions, sufficient for their satisfaction, and in a contest with junior judgment creditors, who have acquired a *lien* on other property, it must be regarded as a satisfaction. To hold otherwise would be to permit the sheriff virtually to destroy the *lien* created by the law in favor of the judgment of the plaintiff in error, and to prefer those judgments younger than his, which were capriciously discharged by him, out of the money belonging to Marks and the Branch Bank at Mobile. It was their duty to attend to the application of the money obtained by a sale under their executions, and by neglecting to do so, they will be remitted to their claim against the sheriff, and will not be permitted to interfere with the *lien* of a junior judgment creditor subsequently obtained. As the *seizure* of property by the sheriff sufficient to discharge the debt, will be a satisfaction as it regards the defendant in execution, though the property be wasted by the sheriff, so will a *levy*

*and sale* under a senior execution, be considered a satisfaction as it respects a junior execution, subsequently levied on other property of the defendant, although the sheriff may make a misapplication of, or waste the money.

This principle was, in effect, held at the last term, in the case of Smith v. Hogan, which was a motion suggesting that Smith, the sheriff, could have made the money on an execution of Hogan, by due diligence. The defence was, that the sheriff had levied executions having a *prior lien* to that of Hogan, on all the property of the defendant which was not more than sufficient in value to satisfy them—and this Court held that a sufficient answer to the motion.

The sheriff has a right, and it is his duty, when he entertains a reasonable doubt as to the proper return to make, and when a return either of *nulla bona*, or *satisfaction*, might subject him to an action, to suggest his doubt to the Court, which will enlarge the time for making his return, until the right can be ascertained, or he is sufficiently indemnified by one of the parties. See the authorities collected on this subject in Watson on Sheriffs, 196.

This the sheriff, Spence, has in effect, done in this case, and the case agreed on by the parties, enabled the Court to ascertain the priorities of the several executions.

From what has been adduced in the preceding part of this opinion, it follows that in a contest between rival executions for the proceeds of the sale of lands, if the *lien* is not lost in some of the modes here pointed out, the date of the respective judgments will determine the priority of right; and the question will not be affected by the fact merely, that some of the executions remained in the hands of a former sheriff.

By the application of this rule, in connection with the other principles stated in this opinion, it follows, that of the eight judgments first described in the agreed case, but two have a prior right to the money to that of the plaintiff in error. These are the judgments obtained by the Bank at Huntsville, in August, 1841, for $584 22, and the one in favor of the State Bank, at Tuscaloosa, of February, 1840, for $919 66. It has also been shown that the two executions on judgments older than that of the plaintiff, in the former sheriff's hands in favor of

70

Marks and of the Branch Bank at Mobile, must, as it respects the plaintiff in error, be considered satisfied.

This leaves of the proceeds of the land sold by Spence, a surplus sufficient to satisfy the judgment of the plaintiff in error, and the Court below erred in not making that appropriation of the money.

The judgment of the Court below must therefore be reversed and here rendered for the amount of the judgment of the plaintiff in error.