# Lancaster *v.* Jordan.

*Statutory Real Action.*

1. *Executions; what stand on same footing.*—An execution from the Probate Court stands on the same footing as an execution from the Chancery Court, and neither possesses any superior dignity or preference over the other.

2. *Same; sale under, what purchaser acquires superior title.*—When land is sold under a junior execution, and is afterwards sold under a senior execution having a prior lien, the purchaser at the latter sale would, irrespective of statutory regulations, acquire the superior title; but possibly a different rule would prevail in the case of personal property.

3. *Same; statutory rules regulating sale under.*—Under the statute declaring the liens of executions, as between different judgment creditors, and between judgment creditors and purchasers from the defendant, "if an *alias* be sued out before the lapse of an entire term, and delivered to the sheriff *before* the sale of the property under a junior execution, the lien created by the delivery of the first execution must be preferred" (Code, § 3211); and by necessary implication, if the *alias* is not delivered to the sheriff before the sale under the junior execution, the lien of the junior execution must be preferred, and the purchaser at the sale under it acquires a superior title to a purchaser at a subsequent sale under the senior execution.

APPEAL from Elmore Circuit Court.

Tried before the Hon. JAS. E. COBB.

This was a real action under the Code, and was brought by the appellants, to recover possession of certain lands in Elmore county. The plaintiffs and defendant were both purchasers at execution sales of the property in question, the plaintiff claiming title by a purchase under an execution from the Chancery Court of Tallapoosa county, and the defendant claiming under an execution from the Probate Court of the same county. Both of these judgments were valid, and executions had been regularly issued without the lapse of an entire term; the execution from the Chancery Court for a longer period than that from the Probate Court. In the interim between the return of one execution and the issuance of another on the decree in the Chancery Court, the sheriff made a regular sale of the property in question under the execution from the Probate Court, and the defendant became the purchaser. It was shown that, when the sheriff sold under the probate execution, he did not have the chancery execution in his hands, but that afterwards, and before the lapse of an entire term, another execution from the Chancery Court came to his hands, under which he

[Lancaster v. Jordan.]

made another sale of the property, at which the plaintiffs purchased.

This was all the evidence, and the court, at the request of the defendant, charged the jury that, if they believed the evidence, they must find for the defendant, and refused a similar charge in favor of the plaintiff. The charge given and the refusal to charge as requested are now assigned as error.

WATTS & SON, and W. P. GADDIS, for appellants.

GUNTER & BLAKEY, contra.

SOMERVILLE, J.—The question for decision involves the relative priority of the liens of two executions, and of the title acquired to certain lands subjected to sale at distinct times under each of them. The plaintiffs claims by a sale made under a senior execution issued on a decree in the Chancery Court, and the defendant by a *prior sale* made under a junior execution from the Probate Court. It is admitted that the one execution possesses no superior dignity over the other derived from the mere fact of its emanating from any particular court. The rule in this State, as declared by statute, is, that an execution, issuing from any court of record, is a lien, in the county in which it is received by the officer, on the lands and personal property of the defendant, subject to levy and sale, from the time the writ is received by the sheriff; and this lien "continues as long as the writ is regularly issued and delivered to the sheriff without the lapse of an entire term."—Code 1876, § 3210.

The present case, however, depends upon the proper construction of section 3211 of the Code, which purports to regulate the order of the liens of different executions, and reads as follows: "The liens of executions as between different judgment creditors, and between judgment creditors and purchasers from the defendant for valuable consideration, are declared to be, that if an entire term elapse between the return of an execution and the suing out of an *alias*, the lien created by the delivery of the first execution to the sheriff is lost; but, if an *alias* be sued out before the lapse of an entire term, and delivered to the sheriff *before the sale of the property under a junior execution*, the lien created by the delivery of the first execution must be preferred."—Code, § 3211.

It is a proper inquiry to ascertain what would be the law irrespective of this statute, in order that we may the better see what, if any, was the mischief and defect against which the former law failed to provide. This will bring us to the nature of the remedy appointed by the law-making power and the true reason of it.

We think it well settled that, irrespective of this statute, a purchaser at an execution sale, made under an older or superior lien, obtains a better title to real estate, which is the subject of sale, than a *prior* purchaser of the same property under a junior or inferior lien. The simple reason is, that the thing sold under the junior execution is the title owned by the defendant, and this being already subject to the incumbrance of the older lien, the purchaser is deemed to have taken it *cum onere,* just as he would in the case of buying such property subject to a valid mortgage lien of which he had due notice by registration or otherwise. And the holder of the superior lien may at any time, while it is kept alive, sell the land previously sold under the inferior lien, and such sale 'will carry with it a superior title. Such, we are prepared to admit, may be conceded *arguendo* to be the prevailing rule apart from all statutory regulations on this subject.—Freeman on Judg. § 377, and cases cited ; *Rankin v. Scott,* 12 Wheat. 177 ; Rorer on Jud. Sales, §§ 809 *et seq.* A different rule, for manifest reasons, would possibly prevail in the case of personal property, but this we need not stop to consider.

The mischief or evil of this principle very clearly is the danger of purchasing titles clouded by superior liens which in their nature are dormant. It is observable 'that the policy of our entire legislation is to protect *bona fide* purchasers for value, and judgment creditors, without notice, against dormant liens and conveyances. The judgment creditor is required to keep his execution alive by the regular issue and delivery of an *alias* to the sheriff from term to term, or else his priority over others may be lost under many circumstances. The most salient feature of the various statutes relating to the liens of competing executions is, that the older lien is lost, in all cases, by permitting "the lapse of an entire term" of the court without the issue of the execution upon which such lien is founded and its delivery to the sheriff.—Code 1876, §§ 3210-3213. This suspension does not operate against the lien in favor of the judgment debtor, who is rather benefitted than prejudiced by it, but is justly confined to junior creditors, mortgagees, or vendees, who acquire intervening rights during the suspension. As said in *Keil v. Larkin,* 72 Ala. 493, 503, "the principle upon which such a lien is lost by mere suspension is that of delay by the plaintiff, for the purpose of favoring the defendant in execution, at the expense of other creditors, whose diligence may be thus paralyzed and rendered of no avail."

The remedy appointed for the mischief is the exaction of diligence in the enforcement of execution liens, and the punishment of *laches* on the part of the judgment creditor by the loss of such lien. Section 3211 of the Code is intended to

[Lancaster v. Jordan.]

settle all disputes by regulating the order or priority of competing execution liens. We can entertain no doubt whatever of the fact that it was designed to affect the titles of purchasers under execution, and that there was no intention to confine its operation to a contest over the proceeds of the sale of lands. The rule was already settled, before the statute, that when a sale of lands is made under a junior execution, the holder of such execution is entitled to the proceeds of sale as against the holder of a senior execution, unless the latter comes into the hands of the sheriff before the sale.—*Campbell v. Spence*, 4 Ala. 543 ; *Bagby v. Reeves*, 20 Ala. 427. To say, therefore, that the statute confers a priority of lien in the given cases to the holder of the junior lien, but that this priority does not affect the title of the land sold, but only the proceeds of sale, would, in our opinion, not only construe a sense into the statute which we fail to discover by a plain, fair and *bona fide* construction, but would impute to it a meaning which would entirely fail to meet the mischief intended to be remedied. "The office of interpretation," it has been justly said, "is to bring the sense *out* of the words used, and not to bring a sense *into* them."—Potter's Dwarris on Stat. 145.

In the light of these principles, the section under consideration has a plain and obvious meaning. First, if an entire term of the court elapse between the time of the return of the senior execution and the suing out of an *alias*, its lien is lost. Secondly, "If an *alias* be sued out before the lapse of an entire term, and delivered to the sheriff, *before the sale of property under a junior execution*, the lien created by the delivery of the first [or senior] execution must be preferred."—Code, § 3211. The necessary implication is that the preference thus accorded to the senior execution is given upon a condition, and this condition is that it must have been issued and delivered to the sheriff without the lapse of an entire term, and *before a sale* under the junior execution. If not so delivered, its preference is lost, and with it falls the right of making a subsequent sale of the same property under the senior execution, so as to override the title acquired at the sale under the junior one. This, we say, is implied, and that which is implied in a statute is as much a part of it as what is expressed. Any other construction would entirely abrogate the legislative intention by imputing no meaning, force or effect whatever to the phrase, "*before* the sale of property under a junior execution," or, what is worse, by making it read "before [or *after*] the sale of property under a junior execution ;" a construction, which, in our judgment, would constitute a clear case of judicial legislation. "The evident purpose of the Code," as observed by Brickell, C. J., in commenting upon the purpose and policy of these statutes in

[Smith v. Vaughan.]

*Hendon v. White*, 52 Ala. 597, 602, "is to obliterate the distinction previously existing between liens on lands and goods and chattels, and to prescribe a uniform rule operating alike on each, and conforming the law as it had been declared as to goods and chattels."

In our opinion, the title of the defendant, which was acquired at a sale made under the junior execution from the Probate Court, was superior to that acquired by the plaintiff under the senior execution from the Chancery Court, because the first sale was made before the latter execution went into the hands of the sheriff. The court so charged the jury, and the charge is free from error.

Affirmed.