# Decatur Charcoal Chemical Works *v.* Moses.

*Motion by Sheriff for Instructions as to Application of Moneys collected under Executions.*

1. *Lien of registered judgment.*—Under statutory provisions, the due registration of a judgment or decree for money gives it "a lien upon all the property of the defendant in the county, which is subject to levy and sale under execution" (Code, pp. 635-6, note); and this lien must prevail as against a junior judgment, notwithstanding a stay of execution by order of the plaintiff, when an execution on each judgment is in the hands of the sheriff at the time of a sale, although the junior execution was issued and levied during the suspension of the senior.

APPEAL from the Circuit Court of Montgomery.

Tried before the Hon. JOHN P. HUBBARD.

Motion by W. D. Westcott, sheriff of Montgomery county, for the instructions of the court as to the application of certain moneys in his hands arising from a sale of property under execution against the Montgomery Furnace and Chemical Company, which was claimed by the Decatur Charcoal Chemical Company and by the Montgomery Iron Works, or its assignee, H. C. Moses. The court ordered Moses to be first paid, and the balance applied to the execution in favor of the Decatur Charcoal Chemical Company. The latter company excepted to this decision, and here assigns it as error. The opinion states the material facts.

MARKS & MASSIE, for appellant, cited *Muir v. Leitch*, 7 Barb. 341; *Love v. Harper*, 4 Humph. Tenn. 113; *Lyles v. Cheney*, Kansas, 13 Pac. Rep. 816; Freeman on Judgments, § 383.

ARRINGTON & GRAHAM, *contra*, cited *Patton v. Hayter, Johnson & Co.*, 15 Ala. 18; *Albertson, Douglas & Co. v. Goldsby*, 28 Ala. 711; *Br. Bk. v. Broughton*, 15 Ala. 132; Freeman on Executions, § 206; 40 Penn. St. 244; *Davidson v. Waldron*, 31 Ill. 121.

STONE, C. J.—The question in this case is, which of two executions had the paramount lien on certain goods and

chattels, the property of the Montgomery Furnace and Chemical Company, a corporation—said corporation and chattels having their *situs* and place of business in Montgomery county, Alabama. The Decatur Charcoal Chemical Works recovered a judgment in the Circuit Court of Montgomery county, against the Montgomery Furnace and Chemical Company, on June 18, 1888. At the request of the president of M. F. & C. Co., the attorney for the Decatur C. C. Works instructed the clerk not to issue execution on said judgment until further orders. On the day the execution was stayed—June 18, 1888—the attorney for plaintiff obtained "a certified transcript of said judgment," and on that day had it "duly recorded in the Probate Court of Montgomery county, Alabama, in full compliance with the law of this State, approved on February 28, 1887, entitled 'An act to provide for the registration and lien of judgments and decrees for the payment of money.'"

After June 19, 1888, but during the same term of the court, the Montgomery Iron Works, a corporation, recovered a judgment against the Montgomery Furnace and Chemical Company, and sued out execution, which was levied upon the said chattels of the Montgomery F. & C. Company. Before the sale under this levy, an execution was issued on the said judgment in favor of the Decatur Charcoal Chemical Works, which was also levied by the sheriff on said chattels. The chattels or goods were advertised and sold under both executions. The proceeds of the sale were less than the amount of the two executions. The judgment in favor of the Montgomery Iron Works had, in the meantime, become the property of H. C. Moses by transfer.

The sheriff, having in his hands the money, proceeds of the sale of said goods and chattels, and each execution creditor claiming the paramount lien, reported the facts to the court from which the executions issued, and prayed the court's instructions as to the proper disbursement of the money. The court decided that Moses, transferree of the judgment recovered by the Montgomery Iron Works, had the paramount lien, and was entitled to be first paid. The present appeal is from that judgment.

Under the provisions of the statute—Sess. Acts 1886–7, p. 99; Code of 1886, p. 635, note—it is declared, "that the plaintiff, or owner of any judgment or decree rendered by a court of record, for the payment of money, may file in the office of the judge of probate of any county in this State a

[Decatur Charcoal Chemical Works v. Moses.]

certificate of the clerk or register of the court by which said
judgment or decree was rendered, showing the court which
rendered the same, the amount and date thereof, and the
amount of costs, the names of the parties, and the names of
the plaintiff's attorney; which certificate shall be registered
by the judge of probate of such county, in a book to be kept
by him for that purpose, which register shall also show the
date of filing, and the name of the owner of such judgment
or decree.   And every judgment or decree so filed and
registered shall be a lien upon all the property of the defend-
ant in such county, which is subject to levy and sale under
execution; and said lien shall continue for ten years from
the date of such registration."

Before the enactment of this statute, judgments were not
liens under our laws, either on real or personal property.
The lien attached only when execution was placed in the
hands of the sheriff, and it extended only to property in the
county in which the sheriff held execution.   And if, after
acquiring a lien by placing execution in the hands of the
sheriff, a term, or six months, were permitted to elapse during
which the sheriff had no execution, the lien would be lost.
Code of 1886, § 2894; 3 Brick. Dig. 451, § 36 *et seq.*

In the absence of the statute approved February 28, 1887,
there can be no question that the stay of execution ordered
and granted in the case of the Decatur Charcoal Chemical
Works, would have had the effect of giving to the later
judgment and execution a paramount lien on the goods, and
on the money for which they were sold.   This, on the prin-
ciple, that a party who thus wrests the process of the court
from its legitimate purpose and office, is conclusively pre-
sumed to intend thereby to favor and aid the judgment
debtor; and such act is a fraud on a junior execution creditor,
which gives the latter a paramount lien.—*Patton v. Hayter*,
15 Ala. 18; *Br. Bank Montgomery v. Broughton, Ib.* 127;
*Albertson v. Goldsby*, 28 Ala. 711; Freeman on Executions,
§ 206.   What was the purpose of that statute, and has it
changed the rule as to voluntary stay of execution by the
plaintiff?

There was a time when, under our statutes, judgments
rendered by courts of record fixed a lien on the real estate
owned by the defendant, if situated anywhere in the State
of Alabama; and that lien did not depend for its creation
or vitality on the issue of an execution, or the placing of it
in the hands of the sheriff.   It was a judgment lien.

1 Brick. Dig. 899. This principle had exceptions, suffering the judgment to become dormant being one of them. Another exception was, that if the plaintiff in such judgment stayed execution, this act of his was constructively fraudulent as against a junior judgment creditor, and subordinated his lien to that of the latter.—*Patton v. Hayter*, 15 Ala. 18. This continued to be the law, and this its interpretation as affecting judgment liens on real estate, until the statute was changed by the adoption of the Code of 1852—January 17, 1853. Since that time, the rule has prevailed as to both species of property, which theretofore prevailed in reference to personalty. That is, there was no lien, until execution was placed in the hands of the sheriff, and the lien was confined to the county in which it was so placed.—1 Brick. Dig. 900, §§ 147-8. ' And this lien would be lost, if there was a lapse of an entire term.—Code of 1886, § 2894; *Childs v. Jones*, 60 Ala. 352; *Matthews v. Mobile Mut. Life Ins. Co.*, 75 Ala. 85. So, if execution was stayed by order of the plaintiff, this gave to a junior execution not so stayed a paramount lien.

Before the statute of February 28, 1887, if plaintiff in a judgment desired to secure a lien in any county, on property owned by, or likely to accrue to the defendant in that county, the only course open to him was to sue out execution, and place it in the hands of the sheriff of that county, and, by successive issues, to keep process in his hands "without the lapse of an entire term." Allowing such lapse to intervene, was a loss of the lien to him. And if, after so placing, or renewing his execution, he, by any positive act or direction of his, caused the execution to be suspended or held up, and during such suspension another execution on another judgment was placed in the hands of the sheriff for levy, this would have transferred the priority of lien to the execution last placed in the hands of the sheriff.

Was it the purpose of the act of 1887 to place the lien of a recorded judgment on the same solid basis as that of a recorded mortgage, and that for a term of ten years? And has a junior creditor with an execution no redress in such case? If so, it requires no stretch of imagination to suppose a case in which a failing debtor may secure to himself a very long term of enjoyment of his property, and keep his other creditors at bay, by the kind indulgence and favoritism of the one creditor who acquired the first lien.

In reply to this phase of the argument it is urged, that

the junior execution creditor can coerce the holder of the older lien to enforce it, and thus secure to himself what may remain after satisfying the recorded judgment. Under what principle of law can the coercion be effected? The statute makes no provision for it; and if we treat the question as a parallel to the right of a junior mortgagee against the senior, it furnishes no solution to the question. A junior mortgagee can not compel the senior mortgagee to foreclose.—*Kelly v. Longshore,* 78 Ala. 203. If the record of the judgment preserves a lien, notwithstanding the stay of execution, we can conceive of no very clear or safe remedy left to the junior execution creditor. He can, perhaps, sell the property subject to the older lien; but it need scarcely be said that such sale would not promise encouraging results. And complicating and embarrassing difficulties would probably arise, respecting the safe custody of personal property so sold, until it might be wanted in satisfaction of the recorded judgment lien. The right of a junior mortgagee to redeem from a senior mortgagee, and then, tacking them together, to foreclose both mortgages, is an equitable principle, and, if not agreed to by the senior mortgagee, can only be enforced in equity. Can this equitable doctrine be applied to the adjustment of the statutory lien created by the registration of a judgment?

We have indulged in these reflections for the purpose of showing what embarrassing inquiries will probably result from the interpretation contended for—namely, that a recorded judgment fastens a lien, which a stay of execution by plaintiff's order does not impair.

But how can we escape this interpretation? The statute, in express terms, declares that a "judgment or decree, so filed and registered, shall be a lien upon all the property of the defendant in such county which is subject to levy and sale." It makes no mention of execution, and we can not hold that execution in the hands of the sheriff was intended to be one of the conditions of the lien. To so hold would not only be in the teeth of the statute, but would show that the statute itself is redundant and meaningless; for, if execution in the hands of the sheriff is necessary to the lien, then registration is not necessary, for the execution gives the lien without the registration. We can not give the statute any operation, unless we hold that it was intended to take the place and have the effect of an execution in the hands of the sheriff, as an instrumentality of creating and

[Decatur Charcoal Chemical Works v. Moses.]

preserving a lien, and we consequently so hold.—*Muir v. Leitch*, 7 Barb. 341.   The instruction not to issue execution can not vary the question, for the statute clearly contemplates that there shall be no execution.   It would be singularly absurd to hold that giving directions to do, or rather not to do, precisely what the statute contemplates shall not be done, works a forfeiture of all benefits secured by the statute; in other words, that giving directions to conform to what the statute contemplates, works a forfeiture of all benefit under it.

It was by force of the statute that an execution in the hands of the sheriff operated a lien on the property of the defendant situated in the county.   It is by virtue of the act of February 28, 1887, that registration of a judgment takes the place of that lien to some extent.   A lien given by statute, can be modified or taken away by statute.—1 Brick. Dig. 900, § 144.

The novelty, if not the intricacy of the question presented, and the abuses and wrongs of which the act of February 28, 1887, may be made the possible instrument, have caused us to consider it more at length than may seem to have been necessary.   Possibly the act is too sweeping in its terms. Possibly it would best subserve the end in view, and rob the statute of its power to oppress, if it should be made the duty of the plaintiff in the recorded judgment to proceed at once to enforce his judgment, whenever a junior judgment creditor has execution in the hands of the sheriff for levy and collection; with a provision that, if he fail to do so, before sale made, the lien of the junior judgment creditor will prevail over his.   This, however, is a question for the legislature, not for us.

In the case we have in hand, there was no actual oppression; for the junior judgment creditor was not delayed in obtaining a sale of the goods levied on, both executions being in the sheriff's hands at the time of the sale.   We need not, and do not, decide that there would be no remedy, if the plaintiff in the older judgment should fail to enforce his claim, after execution on the junior judgment was placed in the hands of the sheriff.   Nor will we decide, if there had been such failure, which creditor would have had the paramount right to the money.—*Campbell v. Spence*, 4 Ala. 543; *Bagby v. Reeves*, 20 Ala. 427; *Lancaster v. Jordan*, 78 Ala. 197.   These questions are not before us.   All we decide is, that on the admitted facts in this record, the

[Winter v. Montgomery Gas-Light Co.]

Decatur Charcoal Chemical Works has the prior right, and is entitled to be first paid.

Reversed and rendered.

CLOPTON, J., not sitting.