# Caldwell v. Houser.

*Motion for application of proceeds of execution sale.*

1. *Sale under junior execution; right to proceeds.*—Where lands are sold under a junior execution, the title to the land passes subject to the lien of all prior judgments or executions, and the money realized from such sale cannot be applied to the payment of a senior judgment or execution lien, but this doctrine does not apply to such sales of personality.

APPEAL from Anniston City Court.

Heard before Hon. B. F. CASSADY.

The facts of this case are fully stated in the opinion.

KNOX, BOWIE & PELHAM, for appellant.

JOS. CARTHEL contra.

McCLELLAN, J.—In December, 1891, T. L. & C. J. Houser obtained a decree against one Williams in the city court of Anniston. In January, 1892, they registered said decree in the office of the judge of probate, whereby it became a lien on said Williams' property. Execution issued on this decree January 26th, 1892, and an alias on January 6th, 1894. Meantime on May 3rd, 1892, the First National Bank of Anniston obtained a judgment in said court against said Williams. On May 12th, 1892, an execution was issued thereon, and on May 7th, 1894, an alias execution was issued. This last execution was duly levied May 30th, 1894, upon the interest of Williams in certain land. After due advertisement the land was sold under said execution to the plaintiff therein for $100, deed was executed to the purchaser, and the execution was credited with said $100, less the costs. Thereupon T. L. & C. J. Houser entered a motion in the city court against the sheriff and the bank to require the sheriff to apply the proceeds of said sale to their judgment against Williams, or to the execution issued thereon June 6th, 1894, and which was in the hands of the sheriff at the time of the sale. The court granted the motion, and from that order the sheriff and the bank appeal to this court, and, apprehending that an appeal might not lie, they also apply, on the record in the appeal case, for a mandamus to the judge of the city court directing him to set aside and vacate said order.

The order in question should not have been made. The superior lien of the Houser judgment was in no wise affected by the sale under the bank's execution. The sale was made subject and in entire subordination to the lien of that judgment, and the purchaser took the land with the lien still on it, and with every remedy that at any time existed for its enforcement still existing and unimpaired. The prior lienors have no right to intercept the proceeds of the sale made under the

junior lien of the bank under its execution, and have them applied to their judgment. Their only right was to pursue the remedies the law gives them to the foreclosure and effectuation of their superior lien upon the land, and which, whatever they are, or however they are to be made effectual, are the same now as they were before the sheriff's sale, and to be pursued in the same way. The law to this effect seems to be well settled. Thus Mr. Freeman says: ''The sale of the lands under execution in no wise effects the lien of a prior judgment, nor does it necessitate any change in the proceedings required to make such lien effectual. The holder of the elder lien may, at any time, during the life of his lien, sell the land previously sold under a junior judgment. Upon the expiration of the statutory period of redemption, he may take out his deed, and thereby obtain title paramount to and free from all claims and sales based upon junior liens. The sale of lands under junior judgment passes title subject to all prior liens. The money produced by such sale, therefore, cannot be applied to the satisfaction of such liens, but must, to the extent of his debt, be given to the creditor under whose judgment it was realized.'' 2. Freeman on judgments, § 377. This text is supported by the Supreme Court of Mississippi in an opinion of Chief Justice Sharkey, in which it is said : ''A younger judgment creditor has a right to sell, but he sells subject to the prior lien; and sells nothing but incumbered property. As he does not interfere with the prior lien, he is of course entitled to whatever his execution may bring. Having a right to sell he is entitled to the fruits of that sale. The older lien is always protected without the aid of the court. Purchasers buy with a view to it, and it is scarcely presumable that they will give more than the worth of an incumbered estate ; and why divest the younger judgment creditor of the product of that which he has a right to sell, and apply it to the extinguishment of a lien which is not affected in any way by the sale? Wherever the law protects the sheriff's vendee who buys under a junior lien, it also protects the prior lien by appropriating the money to its extinguishment ; and it is on this principle alone that such interposition can be justified. But here we have seen that the law does not protect the purchaser under a junior judgment ; he is a

[Caldwell v. Houser.]

purchaser with notice, and takes subject to the prior lien, hence the reason for such an appropriation of money by the court fails. It would be a folly to say that the younger judgment creditor has a right to sell, but that he is not entitled to the fruits of that sale when it injures no one. If the elder liens were thereby divested, then there would be a propriety in satisfying them in their order of priority, so far as the money would do so, but they are not divested or disturbed. The proposition is undoubtedly clear, that a junior judgment creditor may levy on property which is incumbered by an elder judgment. For what purpose may he sell? Is it merely for the purpose of aiding the elder judgment, by having the proceeds applied to extinguish it? If this be all, the proceeds of property which was liable to be sold under his execution, would not be liable to the satisfaction of that execution. What signifies the naked power to sell, without any power over the proceeds."—*Commercial Bank vs. Yazoo County*, 6 How (Miss.) 530. And so in Iowa it is held that "where lands are sold under junior judgments, the title to the land passes subject to the lien of all prior judgments, and the money realized from a sale under a junior judgment cannot be applied to an execution issued upon an elder judgment."—*Bruce v. Vogue*, 23 Iowa, 100.

And of this doctrine, Somerville, Justice, in *Lancaster v. Jordan*, 78 Ala. 197, said: "We think it well settled that irrespective of this statute, a purchaser at an execution sale, made under an older or superior lien, obtains a better title to real estate, which is the subject of sale, than a *prior* purchaser of the same property under a junior or inferior lien. The simple reason is, that the thing sold under the junior execution is the title owned by the defendant, and this being already subject to the incumbrance of the older lien, the purchaser is deemed to have taken it *cum onere*, just as he would in the case of buying such property subject to a valid mortgage lien of which he had due notice by registration or otherwise. And the holder of the superior lien may at any time, while it is kept alive, sell the land previously sold under the inferior lien, and such sale will carry with it a superior title. Such, we are prepared to admit, may be conceded *arguendo* to be the prevailing rule apart from all statutory regulations on this subject—Freeman on

Judg. § 377, and cases cited; *Rankin v. Scott*, 12 Wheat. 177; Rorer on Jud. Sales, §§ 809 *et seq*. A different rule, for manifest reasons, would possibly prevail in the case of personal property, but this we need not stop to consider."

Judge Stone, in a case arising under our present registration statute, apparently recognized the right of a junior lienor to sell subject to the prior lien of a registered judgment; but he apprehends that such a sale would not promise encouraging results, and that complicating and embarrassing difficulties would arise respecting the custody of personal property so sold until it might be wanted in satisfaction of the lien of the registered judgment.—*Decatur Charcoal and Chemical Works v. Moses* 89 Ala. 542. It is to be noted that in the case just cited the subject matter was personal property. The statute referred to in the opinion of Judge Somerville quoted above is section 3211 of the Code of 1876, which is as follows: "The liens of executions as between different judgment creditors and between judgment creditors and purchasers from the defendant for valuable consideration, are declared to be: that if an entire term elapse between the return of an execution and the suing out of an *alias*, the lien created by the delivery of the first execution to the sheriff is lost; but if an *alias* be sued out before the lapse of an entire term, and delivered to the sheriff before the sale of property under a junior execution, the lien created by the delivery of the first execution must be prefered." This statute has reference only to *execution* liens and no bearing whatever on the *judgment* liens provided for by the act of 1887. So that what is said in that case has full application to liens arising by registration of judgments under said act. The recognition by this court of the right of a junior lienor to sell land subject to the superior lien of a registered judgment is thus manifest; and that right is the basis for and logically and necessarily leads to the further proposition, as is so clearly demonstrated in the able opinion of Judge Sharkey, *supra* that as the older judgment lien is in no wise affected by the sale under a junior lien, as nothing sold is covered thereby, and as the junior lienor receives nothing from such sale that is appropriable to the older judgment, the holder of such judgment is not entitled to have the proceeds thereof applied to the satisfaction of

his lien ; but has the same remedy after as he had before such sale and against the same property for the enforcement of his judgment. This doctrine has always been applied and is only applicable to lands. Personal property stands upon a different footing. On account of inconveniences and complications of the kind pointed out by Judge Stone in *Decatur Charcoal and Chemical Works v. Moses* which would attend an effort to sell personalty subject to a prior incumbrance of this sort, and to keep it and have it forthcoming to satisfy the elder lien when the holder thereof shall be pleased to proceed against it at some indefinite time in the future, it is the settled rule that the sale of personalty under a junior writ passes all interests in, the whole title to the property, freed from the liens of older writs or judgments, unless the officer expressly sells only some limited interest therein ; and it follows that, inasmuch as the holders of older liens cannot' in such case go upon the property, notwithstanding the sale, as they may do in respect of land, they are entitled to have the proceeds of such sale applied to their superior liens—the sale having divested their claim upon an interest in the property and vested a perfect title thereto in the purchaser, the sum paid by the purchaser is in reality the price and purchase money for their property thus passed out . of them through the execution of a junior writ. And is is upon this principle that the case of *Decatur Charcoal and Chemical Works v. Moses supra*, was properly decided, the subject matter therein involved being chosen in action, which passed absolutely by the sale under a junior lien leaving the holder of the senior lien no remedy but to have the proceeds applied thereto, though the distinction which obtains between realty and personalty in this connection was not adverted to in the opinion.

In the case at bar, the only lien· which the Housers had was the lien of their registered judgment. We do not doubt that this ·lien may be enforced through the instrumentality of an execution issued on such registered judgment under the act of 1891; but an execution so issued in and of itself imports no· lien and is entitled to no priority as an execution merely, but only as representing, and being a statutory means of effectuating, the distinct lien of the judgment arising upon its registration. So that, as we have said elsewhere, the statute as

[Caldwell v. Houser.]

to priority of *execution* liens has no application here and furnishes no rule for the disposition of the proceeds of the sale made by the sheriff to the First National Bank. That, in our opinion, is determined by the general principle that in respect of lands, the junior lienor has a right to sell the property subject to older liens and to appropriate the proceeds to the satisfaction of his own lien, since in so doing he sells nothing and receives nothing to which the older lienors are entitled.

We are aware that under the law as it existed prior to the Code of 1852, when judgments themselves, and without such registration as is now a prerequisite, constituted liens upon defendants' property, it was held that an older judgment lienor was entitled to the proceeds of the sale of lands made under a junior judgment.—*Bagby v. Reeves*, 20 Ala. 427. The opinion in that case is devoid of reasoning; its citation of authorities is unsatisfactory, and its conclusion, as applied even to the then state of the law, is we think, unsound. Moreover it is opposed to much more recent cases recognizing the *right* of a junior judgment lienor to sell land subject to the lien of a prior judgment, from which necessarily flows the further right of such lienor to the proceeds of sale. And while, notwithstanding all this we might for the sake of uniformity of decision apply that doctrine to such judgment liens as existed when it was announced, we decline to extend it to the liens of judgments provided for by present statutes, which are less uncertain and more easily ascertained, and have been, not inaptly likened to the liens of recorded mortgages.

We, therefore, hold that the city court erred in granting the motion of appellees to apply the proceeds of the sale of William's interest in certain lands to their registered judgment. That order will be vacated, and an order here entered denying and dismissing said motion. Appellees having made no objection to the case being here by appeal, we do not consider whether appeal or *mandamus* was the proper remedy of the bank and the sheriff, especially since they have presented the case here in both forms.

Reversed and rendered.