# Rochester *v.* Armour.

*Bill in Equity by Creditors to enforce General Assignment, and set aside Confessed Judgments.*

1. *Confessed judgments, as part of general assignment.*—An insolvent debtor may make a valid sale of his property, in absolute payment of a *bona fide* existing debt, there being no material discrepancy between the amount of the debt and the value of the property, and no benefit being reserved or secured to himself; but he can not create a preference in favor of one creditor by a confession of judgment, the registration of which gives a lien on all of his property, and which is immediately followed, on the same day, by the execution of an assignment for the benefit of his creditors generally; and in such case, the creditor in the confessed judgment will be placed on a footing with the other creditors, and compelled to refund any surplus of assets he may have received over and above his proportionate share.

APPEAL from the City Court of Birmingham, in equity.
Heard before the Hon. H. A. SHARPE.

All the facts are sufficiently stated in the opinion.

LANE & WHITE, for appellants.—(1.) Judgments rendered and confessions of judgment are not such preferences of creditors as are condemned by the statute.—*Ins. Co. v. Foster*, 58 Ala. 502; *Holt v. Bancroft*, 30 Ala. 193; *Norman v. Walfersberger*, 19 Pa. St. 59; *Gummersell v. Handbloom*, 19 Mo. App. 274; *Sampson v. Arnold*, 19 Iowa, 479; Blakey's

[Rochester v. Armour.]

Appeal, 7 Pa. St. 449. (2.) A debtor may prefer one or more creditors to the exclusion of his other creditors, provided it is done without any intent to hinder, delay or defraud his creditors.—*Shealy v. Edwards*, 75 Ala. 411; *Warren v. Jones*, 68 Ala. 449; *Heyer v. Bromberg*, 74 Ala. 524; *Chipman v. Sterne*, 89 Ala. 207. (3.) A debtor may prefer one or more creditors by selling his entire property to such creditor or creditors, and the fact that a portion of the consideration is an agreement by the purchaser to pay other creditors of the debtor does not invalidate the sale.—*Chipman v. Sterne*, 89 Ala. 207; *Rankin v. Vandiver*, 78 Ala. 562; *Levy v. Williams*, 79 Ala. 171; *Hodges v. Coleman*, 76 Ala. 103. (4.) Trust deeds and mortgages conveying all, or substantially all, of the debtors property, are construed to be general assignments under our statute, because they are kindred instruments which operate as a transfer of the debtor's property with a resulting trust, either in the instrument or by law, to the debtor.—*Danner v. Brewer*, 79 Ala. 191; *Crawford v. Kirksey*, 58 Ala. 282. (5.) An absolute sale of property made by a debtor in payment of a debt, which is free from all reservation to him, is not an assignment, and does not come within the provisions of the statute against preferences under a general assignment. *Otis v. Maguire*, 76 Ala. 295; *Danner v. Brewer*, 69 Ala. 191; *Shirley v. Teal*, 67 Ala. 449.

MOUNTJOY & TOMLINSON, *contra.*—(1.) In creditor's bills, persons holding portions of the debtor's property, or liens thereon, under separate and distinct conveyances, may be joined as defendants.—*Lehman v. Meyer*, 67 Ala. 396; *Randall v. Boyd*, 73 Ala. 282; *Stone v. Ins. Co.*, 52 Ala. 589; *Boyd v. Hunter*, 44 Ala. 705; *Rapier v. Gulf City Paper Co.*, 69 Ala. 476: *Adams v. Sayre*, 70 Ala. 318. (2.) A bill in equity is the proper way for complainants in this case to seek relief.—Burrell on Attachment, p. 738; *Clapp v. Nordmeyer*, 25 Fed. Rep. 71. (3.) Judgments confessed immediately before a general assignment are considered to be a part of the same assignment.—*Clapp v. Nordmeyer*, 25 Fed. Rep. 71; *White v. Cottshaven*, 129 U. S. Rep. 329; *Preston v. Spaulding*, 120 Ill. 208; s. c., 10 N. E. Rep. 903; *Miners National Bank*, 57 Pa. St. 143; *Wilks v. Walker*, 22 S. C. 108; *R. R. Co. v. Dunn*, 52 Ill. 260.

STONE, C. J.—This case comes before us on an appeal from a decretal order overruling a demurrer to the bill filed by P. D. Armour and others, against Rochester, as their alleged debtor. In this condition of the record, we must treat

as true every averment of the bill which is well pleaded.	So treating the bill, the following is a statement of the facts as it presents them.

Rochester was a retail merchant in Birmingham, and the complainants, Armour and others, who were wholesale merchants, were creditors of his in various sums, aggregating about one thousand dollars, due for merchandise sold to him, and due before this bill was filed. All these debts were contracted before Rochester confessed the judgments and executed the assignment after noticed.

Rochester continued in business until September 13, 1889. On that day, without previous suit or process, he confessed two judgments in the City Court of Birmingham; one in favor of the First National Bank of Birmingham for over five thousand dollars, and the other in favor of R. J. Terry, for near two thousand dollars. Said confessed judgments were immediately recorded in the office of the probate court of Jefferson county, the county in which Birmingham has its *situs*. Such registration, under our statute, gives to the judgment "a lien upon all the property of the defendant in the county, which is subject to levy and sale under execution."—Code of 1886, pp. 635–6. note; *Decatur Chemical Works v. Moses*, 89 Ala. 538.

Attached as an "exhibit" to the bill in this case is a copy of a general assignment made by Rochester to Allen, as trustee, in which he conveyed all his property, less his exemptions of personal property, for the equal benefit of all his creditors. This assignment describes neither the creditors provided for, nor the amount of their several claims. The assignment bears date September 12, 1889, the certificate of acknowledgment and certificate of registration September 13. We infer from the averments of the bill that the judgment creditors and trustee claim that the assignment was not completely executed by delivery until September 13, and after the judgments had been confessed and filed for record. The assignee converted the personal property into money, and recognizing the prior lien of the judgments, paid them in full, leaving of the assigned effects in his hands greatly less than enough to pay the other creditors in full. It is not charged that the sums for which judgments were confessed were not real, *bona fide* debts.

As we have said, this is a bill by creditors of Rochester. They are creditors at large, not having reduced their claims to judgments. The defendants are Rochester, Allen, the trustee, and the two confessed-judgment creditors. The theory of the bill is, that the confessions of judgment and the assignment are parts of one purpose and transaction, and that they col-

lectively constitute a general assignment under section 1737 of the Code of 1886. The prayer for relief is, that the entire effects be administered and disbursed, *pro rata*, for the equal benefit of all the creditors, and to this end, that the bank and Terry be required to refund for the benefit of the other creditors the excess they have received above their *pro rata* shares. The bill, among other things, avers as follows: "Your orators charge that said assignment was in fact and in law executed before said respondents R. J. Terry and said First National Bank obtained their said judgments, as will appear from the face of the assignment and the record of said judgments in said city court; and your orators aver that, if they are mistaken, and, as is claimed by defendants to this bill, said deed of assignment was not made and delivered prior to confession of said judgments, that the confessions of said judgments were made by said Richmond Rochester on the eve of the assignment, and in contemplation thereof, and was a part of the general scheme of said assignment—in fact, a part of the same transaction—and that said deed of assignment had already been drafted at the time of the confessions of said judgments, and that said respondents R. J. Terry, the First National Bank and James Allen, knew of the contemplated assignment, and said confessions of judgment were made by collusion, with the intent and purpose by all of said parties to procure a preference of said R. J. Terry and said First National Bank over other creditors of said Richmond Rochester; that said deed of assignment was filed for record only an hour or two after said judgments had been obtained and filed for record in the probate court."

Considered in its entirety, the bill and exhibit clearly show that, by the confessions of judgment and the assignment, Rochester confessed his insolvency, turned over his effects for the benefit of his creditors, and ceased to do business.

There was a demurrer to the bill, which the chancellor overruled, and from that decretal order this appeal is prosecuted.

In the case of *Holt v. Bancroft*, 30 Ala. 193, the statute we are considering for the first time came before this court for interpretation. The facts of that case were, that on May 9, 1854, Holt & Chambers, merchants, made a deed of trust, and thereby conveyed about one third of their merchandise for the security of one of their creditors. "At the time this conveyance was executed, the debtors intended to make a general assignment of all their effects for the benefit of all their creditors, and so informed the trustee; but this intention was not communicated to the preferred creditor. In pursuance of this intention, on May 17, 1854 (eight days after the first deed),

they conveyed all their effects . . . for the equal benefit of all their creditors." This court held, that the two deeds were, in law, but one transaction, that they together constituted a general assignment, and that all the creditors took under them alike and equally. The opinion was delivered by WALKER, J., and he supported it by a strong and able argument, and by a citation of many authorities. Speaking for the majority of the court, he said : "The question in this case is, what effect does the law assign to the two deeds, and according to what principle is their effect to be ascertained and measured. All that we assert is, that the first deed is but a part of a general assignment, completed by the execution of the second deed, as the first day's travel, although followed by some delay, is but a part of the continued journey. The law regards the two deeds as together composing a general assignment, because it will not permit that to be done indirectly, which can not be done directly. That which violates the policy of a statute, is as much condemned as if it violated the letter. The law no more tolerates the evasion of a statute by artifice, than a palpable violation of it. . . . Visiting, therefore, the act of evading the statute with the consequence of a direct violation, we can only annul the preference, and place the beneficiary of the first deed on a footing with the other creditors."

In *Crawford v. Kirksey*, 55 Ala. 282, 301, we drew a distinction between that case and the case of *Holt v. Bancroft.* We do not think the later case is opposed to the former. We may add, that in the case of *Crawford v. Kirksey*, the main question was not whether the two deeds constituted a general assignment, but whether the deed to Crawford was fraudulent.

In 1877, the legislature of Illinois enacted what is there called the "Voluntary Assignment Act." Its language is : "Every provision in any assignment hereafter made in this State, providing for the payment of one debt or liability in preference to another, shall be void, and all debts and liabilities within the provisions of the assignment shall be paid *pro rata* from the assets thereof." It will be observed that, in this statute, the word assignment is used, without the qualifying adjective, *general*, which is employed in ours. The interpretation, however, which the statute has received in that State, makes their assignment the synonym of our general assignment. And so far as the question we have in hand is concerned, their ruling is precisely in point in the construction of our statute. In *Preston v. Spaulding*, 120 Ill. 208 ; s. c. 10 N. E. Rep. 903, the debtors had preferred certain of their creditors by confes-

sion of judgments, and the same day, but later in the day, made a general assignment for the benefit of creditors. The non-preferred creditors sought by bill to have the preference annulled, and to be let in to share *pro rata* with the judgment creditors. In an able and exhaustive opinion, in which many decisions of different courts are collated and reviewed, the court decreed to complainants the relief prayed for. After stating and proving by the record and the testimony it contained that the debtors were ruinously insolvent, must succumb to the inevitable, and were making preparation to surrender their effects and their business, the court employed the following emphatic language :

"It is clearly shown by the record, that as early as September 30, 1882, they began preparing for the failure by a secret transfer of real estate ; and on that day and during the twenty-five days following, four conveyances were made of their individual real estate to near relatives, none of which were, however, placed upon the record till the day before the assignment, and various payments of money were made, during the same time, to relatives, on alleged indebtedness. After these transactions, and with a full knowledge of their impending failure, a meeting with their legal advisers was arranged for the evening of October 31, for the purpose of determining the measures to be adopted, and the shape their failure was to assume. The meeting took place, and the determination was then formed to make a voluntary assignment, and to prefer the banks by giving them judgment notes. The right of a failing debtor to sell his property for a valuable consideration, to mortgage his property as security for a *bona fide* indebtedness, and in the disposition of his property to prefer one or more creditors, to the extent of the *bona fide* indebtedness, has been recognized in this State ; but since the Voluntary Assignment Act of 1877 all preferences by voluntary assignment have been void.

"It is not contended that, here, in the single instrument declaring the debtors' intention to make a voluntary assignment of all their estate for the benefit of creditors, and which they acknowledged and recorded, an express preference was made in favor of the judgment creditors ; so that if we are to be confined to the express provisions of that writing, the question would have to be resolved in the negative. If then, these preferences are to be held to be within the 'provisions' of the assignment, or 'comprehended within its general terms,' it must be because they fall within the intent and spirit of the act.

"It will be observed, this act does not assume to interfere in the slightest degree with the action of a debtor while he re-

tains the dominion of his property. Notwithstanding this act, he may now, as heretofore, in good faith sell his property, mortgage or pledge it to secure a *bona fide* debt, or create a lien upon it by operation of law, as, by confessing a judgment in favor of a *bona fide* creditor. But when he reaches the point where he is ready and determines to yield the dominion of the property, and makes an assignment for the benefit of his creditors under the statute, this act declares that the effect of such assignment shall be the surrender and conveyance of all his estate, not exempt by law, to his assignee—rendering void all preferences, and bringing about the distribution of his whole estate equally among his *bona fide* creditors; and we hold that it is within the spirit and intent of the statute, that when the debtor has formed a determination to voluntarily dispose of his whole estate, and has entered upon that determination, it is immaterial into how many parts the performance or execution of his determination may be broken—the law will regard all his acts, having for their object and effect the disposition of his estate, as parts of a single transaction; and on the execution of the formal assignment, it will, under the statute, draw to it, and the law will regard as embraced within its provisions, all prior acts of the debtor, having for their object and purpose the voluntary transfer or disposition of his estate to or for creditors; and if any preferences are shown to have been made or given by the debtor to one creditor over another in such disposition of his estate, full effect will be given the assignment, and such preferences will, in a court of equity, be declared void, and set aside, as in fraud of the statute.

"The application of the law, as thus interpreted, to the facts of the case, is not difficult. The debtors, conscious of their hopeless insolvency, and determined to make disposition of their whole estate to and for their creditors, entered upon the execution and performance thereof. Claiming to be indebted to some of their immediate relatives, they made preferential payments and conveyances of real estate directly to such relatives in satisfaction of such alleged indebtedness; and then, with one hand, they proceeded to make and deliver a series of judgment notes, for the avowed purpose of preferring certain of their creditors, among whom were appellants, and, with the other hand, made a deed of assignment for the benefit of creditors generally, in form free from legal defect. Both these operations—the making and delivering of the judgment notes and the preparation of the deed of assignment—are shown to have been carried on at one and the same time by different members of the debtor firm; but so skillfully timed were these different steps, that the favored

[Rochester v. Armour.]

creditors had just sufficient time to take their judgment notes into the different courts in Chicago, and there have judgments entered thereon, and executions issued, and placed in the hands of the executing officers, to perfect a lien upon personal property of the debtors, before the deed of assignment was placed on file."

We have quoted thus largely from the Illinois case, because of the striking resemblance of many features of that case to those presented in the one we have in hand. Its moral tone is high, and the ruling tends to promote honesty and fair dealing, and to the healthful enforcement of beneficent, remedial legislation, called into existence by the behests of legitimate commerce. The world can not be too often told that in judicial administration, as in morals, that which can not be accomplished directly, can not be attained by indirect means.

In *White v. Cotzhaven*, 129 U. S. 329, the Illinois statute came before the Supreme Court of the United States, and in an able opinion by Harlan, J., the principles of the case of *Preston v. Spaulding* were not only followed, but were emphatically approved. In this case, we need not extend the principle as far as was done in the case last cited.

The following authorities assert substantially the same doctrine.—*Kellogg v. Richardson*, 19 Fed. Rep. 70; *Clapp v. Ditman*, 19 *Ib.* 15; *Perry v. Corby*, *Ib.* 737; *Clapp v. Nordmeyer*, 25 Fed. Rep. 71; *Wilks v. Walker*, 22 So. Car. 108; *Appeal of Miners Nat. Bank*, 57 Penn. St. 193.

In Mississippi it seems there is no such statute.—*Estes v. Gunter*, 7 Sup. Ct. Rep. 1275.

In what we have said, it is not our intention to overrule or qualify our former rulings, in which we have held that a debtor, not able to pay all his debts, may, by absolute sale, pay part of his debts, and leave himself unable to pay his other debts, provided the sale is for the reasonably fair value of the property sold, and the seller reserves no benefit to himself. Our statute does not interdict such sale.—*Crawford v. Kirksey*, 55 Ala. 282; *Warren v. Jones*, 68 Ala. 449; *Heyer v. Bromberg*, 74 Ala. 524; *Hodges v. Coleman*, 76 Ala. 103; *Chipman v. Stern*, 89 Ala. 207. If it be desirable to change this rule in the interest of commerce, the legislature alone has power to do it.

The confessions of judgment in favor of the bank and Terry were, in no sense, either an extinguishment of the debts, or a vesting of title to property in them. The debts remained. The only effect was to give them a better security; to give them a preference, if the liens be held good. To allow them to reap such advantage would destroy all that is useful in

[Morgan v. Lehman, Durr & Co.]

section 1737 of the Code. We concur with the chancellor, and affirm his decree.

Affirmed.

