# Steiner & Lobman v. Parker & Co.

*Bill to declare collusive attachment a general assignment.*

1. *Collusive attachment.*—A bill alleging a collusive attachment, upon a simulated debt levied upon all the assets of the defendant without more, does not authorize a court of equity to declare the attachment a general assignment.

2. *Same; prayer for special and general relief.*—When the allegations of a bill are to the effect that an attachment was sued out upon a simulated debt, was collusive, and for the purpose of hindering, delaying, or defrauding creditors, and the bill contains a special prayer

that the attachment be declared a general assignment, and also a prayer for general relief, there is equity in the bill under the general prayer.

3. *Sustaining demurrer to bill, on good and bad assignment of grounds.* —A decree sustaining a demurrer to a bill would be affirmed if any of the grounds assigned are well taken, and the complainant must cure the defects which are subject to demurrer, by amendment, before he can successfully appeal.

4. *Misjoinder of parties.*—A creditors bill is not objectionable, because of a misjoinder of parties, complainant, upon the ground that one of the complainants was a judgment creditor whose judgment had been recorded, and the other complainants were simple contract creditors. A court of chancery has full capacity to adjust priority of claims and liens.

APPEAL from Escambia Chancery Court.
Heard before Hon JERE N. WILLIAMS.

This bill was filed by Louis Steiner and Nathan Lobman, under the firm name of Steiner & Lobman, and Chas. A. Stern and Abe Kraus, under the firm name of C. A. Stern & Company, formerly Stern & Kraus, as creditors of C. D. & S. E. Henderson, doing business under the name of Peters Store Company, formerly Henderson Bros., for the benefit of themselves and any other creditors who may see fit to make themselves parties.

The bill alleges that C. D. & S. E. Henderson had been doing a general mercantile business at Alco in Escambia county, Alabama, and also at Repton, Conecuh county, Alabama, and while so engaged became indebted to Steiner & Lobman in a large sum of money amounting to $945.55, all of which was due before the filing of this bill.

The bill also alleges that the Hendersons at a different time and place, and under a different firm name, but the same individuals, became indebted to Stern & Kraus, in the sum of $400, and the said Stern & Kraus sued the said Hendersons in the Circuit Court of Conecuh County, where they were then residing, and recovered a judgment against them on the 9th day of April, 1885, for the sum of $419.04 damages and $10.15 costs. Said judgment was regular in all respects, and that an execution was regularly and duly issued upon the same on the 25th day of April, 1885, which was returned by

the sheriff "no property found." That on the 26th day of March, 1891, Stern & Kraus had a certificate of said judgment issued by the clerk of the Circuit Court of Conecuh county, and had the same duly recorded in the office of the Judge of Probate of said county, a copy of which certificate is attached to the bill with the endorsements thereon, as "Exhibit A." That in addition to the said judgment the said C. D. & S. E. Henderson became indebted to Stern & Kraus before the filing of this bill in another large sum, evidenced by notes, which notes were due before the filing of this bill.

It is alleged in the bill that the complainants requested the said C. D. & S. E. Henderson to make them a written statement as to their condition, which they did on the 21st day of July, 1894, stating therein, among other things, that they were worth net over and above their total liabilities, $5,450, and in addition stated they were not in debt in any sum whatever to their relatives or any of them.

The bill further shows that about November 1st, 1894, the said C. D. & S. E. Henderson had a stock of goods at Alco, Escambia county, of the value of $5,000, and a stock of goods at Repton, Conecuh county, of the value of $2,000, upon which latter stock in Conecuh county, the judgment of Stern & Krauss was a lien. That the said Hendersons also owed divers other parties large sums of money.

The bill further avers that a day prior to the attachments hereinafter named, one of the Hendersons visited Mobile for the purpose of consulting with Christian & Craft Grocery Company. a corporation resident in Mobile, and a creditor of the said Hendersons, and while there it was agreed between said corporation and the said Henderson that the Christian & Craft Company should attach the goods of the Peters Store Company, and in pursuance thereof the said Henderson immediately returned home, and upon the same train the Christian & Craft Grocery Co., sent an attachment bond filled out in blank, and also an attachment affidavit to certain attorneys in Brewton, Escambia county, who had been the attorneys of the Hendersons up to this time.

The bill further alleges that said attorneys, before the levying the attachment of the Christian & Craft Grocery Company, caused an attachment to issue in favor of Jno,

M. Parker & Co., for the sum of $98, that the attachment affidavit in that case was made, and the bond made, by the same attorneys. Immediately thereafter the same attorneys had the Christian & Craft Grocery Co. attachment to issue, purporting to be placed in the hands of the sheriff eight minutes after the Parker attachment was placed there; Parker attachment being received by the sheriff Nov. 1st, 1894, at 2 o'clock p m., the Cristian & Craft attachment the same day at 2:08 p. m., and at 2:12 p. m the attachment of Mrs. S. A. Henderson, wife of S. E. Henderson, sued out by the same attorneys. The Christian & Craft attachment was for $3,261.84, and that of Mrs. Henderson $1,500. That after this, other attachments were issued, but none of said attaching plaintiffs were interested in this case, from the fact that the three named above will consume all the assets. The bill further shows that Parker & Co. are non-residents of the State of Alabama; that the Christian & Craft Company is a corporation with its principal place of business at Mobile, Alabama; that S. A. Henderson, E. S. McMillan, C. D. Henderson and S. E. Henderson reside in Escambia county, Alabama; that R. F. Irwin resides in Conecuh county, Alabama.

The bill further shows that all of said attachments, including the one issued in favor of the wife of S. E. Henderson, were issued upon the grounds that the said C. D. & S. E. Henderson "have moneys, property or effects liable to satisfy their debts which they fraudulently withhold," when in truth and fact no such grounds existed; nor did any ground exist. The bill further shows that the said C. D. & S. E. Henderson entered into an agreement and understanding with the creditors named above, and their attorneys, that a priority or preference should be given by the said Hendersons to said creditors over their other creditors, and that in pursuance of said agreement and understanding the above attachments were sued out and levied; that the Hendersons knew, before the attachments were sued out, that they were going to be sued out, notwithstanding the fact that no ground whatever existed for the issuance of the same; that they have submitted to it, and have not brought any suit for damages upon any of said bonds, and upon information and belief that they do not intend to do so; thus carrying out the pre-determined design

[Steiner & Lobman v. Parker & Co.]

and agreement between them and the said creditors to
hinder, delay and defraud their other creditors, includ-
ing complainants; that said attachments created a pre-
ference, and is equivalent to a conveyance by the said
Hendersons of substantially all their property in pay-
ment of a prior debt. · The bill further avers that E. S.
McMillan, as sheriff of Escambia county, and R. F. Ir-
win, as sheriff of Conecuh county, took possession of the
property described above and intended to shortly sell the
same, and will pay over the proceeds to the attaching
creditors named above in the order of their priority, un-
less prevented by this Honorable Court, when in truth
and fact the debts claimed by said attaching creditors,
are to a very large degree simulated, and some of the
attaching creditors are insolvent,—the last allegation
upon information and belief.

The bill further alleges that upon advice and belief
that the said attachments constituted together one general
assignment for the benefit of all the creditors of the said
Hendersons.

The bill further shows that branch writs of attachment
were issued by the clerk of the Circuit Court of Escam-
bia county, directed to the sheriff of Conecuh county,
which branch writs were received by the sheriff of Con-
ecuh county in the order set forth heretofore by the
sheriff of Escambia county; that the said sheriff of Con-
ecuh county took possession of the stock of goods at
Repton, Conecuh county, Alabama, under the attach-
ments, although complainants demanded that he levy
the execution of Stern & Kraus, being a prior lien, still
he refused to do so, and will sell the goods at Repton,
and pay the proceeds over to the attaching creditors,
which is in violation of the equitable rights of com-
plainants, and is wholly illegal.

Complainants further aver that they were without re-
lief in any court of law, and are compelled to assert their
rights in this court of equity; that they have no ade-
quate remedy elsewhere, and that unless this court in-
tervenes, irreparable damage will be done complainants.
The bill then makes Jno. M. Parker & Co., the Christian
& Craft Grocery Company, S. A. Henderson, E. S. Mc-
Millan, as sheriff of Escambia county, and R. F. Irwin,
as sheriff of Conecuh county, C. D. & S. E. Henderson,
defendants.

The prayer of the bill asks that the attachments be treated and declared a part of the general assignment of said Hendersons ; that the moneys coming into the hands of the two sheriffs he treated as a trust fund and administered by the orders of this court, except enough to satisfy the judgment of Stern & Kraus, which complainants ask that the sheriff of Conecuh county be required to pay in full, with interest and costs; that the said sheriffs be enjoined and restrained from paying over to the attaching creditors any part of the proceeds of said sale, that all such orders and decrees as may be necessary to secure the administration of the attached property be made ; and that if complainants are mistaken in the relief prayed, that the court will make such other necessary orders, etc.

The defendants demurred to the bill on the following grounds :

1st.   That the said bill is wanting in equity.

2nd.   That there is no equity in the bill, in this : That no court can or will convert attachment suits into a general assignment for the equal benefit of all the creditors, and if the complainants Stern & Kraus have any rights by virtue of their recorded judgment, there is a plain and adequate remedy at law for the enforcement of the same by the proper motion or motions against the sheriff of Conecuh county, in the Circuit Court.

3rd.   That the said bill presents no adequate ground for equity jurisdiction or interference, because the Chancery Court no more than any other court can declare an attachment a general assignment for the equal benefit of all the creditors, and any right that may belong to the complainants owning the judgment described in the bill can be asserted in a court of law.

4th.   That there is a misjoinder of parties complainant in the bill.

5th.   That the allegations of the said bill show no community of interest between the complainants and Stern & Kraus, but rather that the interest of each is opposed to the interest of the other.

6th.   That the relief prayed for, in so far as it would have the said attachment declared a general assignment is not warranted by the facts alleged in said bill.

7th.   That the allegations as to the circumstances

[Steiner & Lobman v. Parker & Co.]

attending the issuance and levy of said attachments, if true, show no grounds for disturbing said levies, and the prosecution of the said attachment suits, for no fraud in law or fact, is consummated by defendants simply agreeing or consenting to plaintiffs suing out an attachment for a *bona fide* demand, when no grounds of such attachment exists.

8th. That the relief prayed for, in so far as it would have this court declare said attachment suits a general assignment, can not be worked out by any rule of law or equity known to our jurisprudence, because to constitute an assignment of property, there must be a divestiture of the title to the property out of the assignor into an assignee, and an attachment suit, no matter how brought, can not have the effect of divesting any title out of the defendant.

9th. That the attachments were sued out by and through consent and agreement of the said Hendersons, the defendants in said attachment suit, charges no such state of facts as would bring said attachment suit within the field of operation of our statutes, which make certain preferences of creditors by insolvent debtors general assignments for the equal benfit of all the creditors of such debtor, and said statutes constitute the only authority for decreeing any preference of a creditor by an insolvent debtor to be a general assignment.

10th. That said bill fails to aver that said Hendersons have not sufficient property outside of what has been levied upon under said attachments to satisfy the demands of complainants.

11th. That the portion of the prayer of said bill which asks that the recorded judgment of Stern & Kraus be declared a prior lien upon the stock of goods in Conecuh county is inconsistent with the other portion of the prayer of said bill, which asks that all of said attachments be declared to constitute one general assignment for the equal benefit of all the creditors.

12th. That the said Stern & Kraus pray that a general assignment of all the attached property by said Hendersons for the equal benefit of all the creditors of said Hendersons be declared by this court, and that they be allowed to repudiate said assignment in part, and accept it in part.

13th. That the facts stated in said bill show that the said Stern & Kraus have no lien upon the said property of the Peters Store Co. in Conecuh county by virtue of their said recorded judgment superior to the rights of this defendant, as a creditor of the said Peters Store Company, to have the property of said partnership first devoted to payment of the partnership indebtedness.

14th. That the facts set forth in said bill show that the lien acquired by this defendant by virtue of the levy of its said attachment, upon said stock of goods in Conecuh county is superior to the lien of said recorded judgment upon said property if said judgment be a lien at all.

15th. That said bill shows that the stock of goods in Conecuh county was the propery of C. D. & S. E. Henderson, as partners under the firm name and style of the Peters Store Company, and that this defendant has attached the same to secure a debt due it by said partnership, the Peters Store Co., and that the judgment which complainants Stern & Kraus claimed to be a first lien upon said goods was rendered against the said C. D. & S. E. Henderson, for a debt contracted by the firm of Henderson Bros., and therefore the said complainants are not entitled to have the said goods devoted primarily to the payment of their said judgment, for the debts of a partnership must be paid before property of such partnership can be subjected to any other demands.

16th. That under the facts stated in said bill, if the said Stern & Kraus ever had any lien upon the said stock of goods in Conecuh county, superior to the claims of the creditors of the Peters Store Company, said lien was waived by a failure to assert it in any way for the time shown by said bill, and they are not therefore entitled to the relief prayed.

The court sustained the 2nd, 3rd, 6th, 8th, 9th, 12th and 15th grounds of demurrer, from which ruling, the complainants appealed.

GRAHAM & STEINER, for Appellants.

RABB & STEVENS, contra.

COLEMAN, J.—The bill was evidently filed upon the

theory, that attachments sued out by creditors, acting collusively with the debtor, the purpose being on the part of the debtor to prefer the attaching creditors, and on the part of attaching creditors and the debtor, to hinder, delay and defraud other creditors, the attachment having been levied upon all available assets, might be declared by a chancery court to be a general assignment within the statute, and administered for the benefit of all the creditors. The principle applicable to this theory of complainants' bill, has been thoroughly considered by this court, in the case of *Bell et al. v. Goetter et al.,* 106 Ala. 462, and in *Rochester v. Armour,* 92 Ala. 432, and the more recent case of *Pollak Co. v. Muscogee Mfg. Co.* present Vol *post.* The bill avers collusion between the attaching creditors and the debtor, that in fact no grounds existed for the suing out of the attachments, that there was an understanding that the attaching creditors would not be sued upon their bonds, "that the debts claimed by the attaching creditors were in a large degree simulated," and that the "design and agreement between them (the debtors) and said creditors was to hinder, delay and defraud their other creditors, including complainants." These averments appear in the abstract of the case, and were not demurred to because of indefiniteness.

In addition to the special relief prayed, there is a prayer for general relief. So far as the bill charges that the attachments sued out were upon simulated debts, and were sued out by collusion with the debtor, to hinder, delay and defraud creditors, the case made by the bill, is fairly within the influence of the case of *Cartwright v. Bamberger, Bloom & Co.* 90 Ala. 405; *Klein v. Miller,* 97 Ala. 507.

There was equity in the bill in so far as it averred fraud in the issuance of the attachment, and under the prayer for general relief the complainants were entitled to relief. The demurrer to the whole bill for want of equity should have been overruled. If the demurrer for want of equity had been directed to that phase of the bill which sought relief upon the grounds, that the several attachments should be declared in effect a general assignment the demurrer would have been well taken. Some of the grounds of demurrer were well assigned, and the court did not err in sustaining the demurrer to

[Barnewall v. Murrell.]

the bill.   It cannot avail appellant to reverse the case,
for the reason that the court erred in sustaining some of
the grounds, which were not well assigned.   The decree
sustaining a demurrer to a bill will be affirmed if any of
the grounds assigned, are well taken, and complainant
must cure the defects which are subject to the demurrer,
by amendment, before he can successfully appeal.

The bill was not objectionable, because of a misjoin-
der of complainants, upon the ground that one of  the
complainants was a judgment creditor whose judgment
had been recorded, and the other complainants were
simply contract creditors.   A court of chancery has full
capacity to adjust priority of claims and liens.

In affirming the decree of the chancery court, sustain-
ing the demurrer .to the bill, it must not be understood,
that we affirm all the rulings of the court, but only so
far as. to hold that the demurrer was well taken and
the the bill should have been amended.   Complainants
are allowed thirty days from the date of the decree of
affirmance within which to amend their bill.

Affirmed.