[Pollak & Co. *et al.* v. Muscogee Manufacturing Co.]

# Pollak Co. *et al.* v. Muscogee Manufacturing. Co.

108  467
108  365
108  395
108  467
118  527
108  467
121  189

*Bill in Equity to have Collusive Attachments followed by a Deed of Assignment Declared Fraudulent as to Preferences Sought to be Obtained, and to be Merged in the General Assignment.*

1. *Collusive attachments as part of general assignment; unlawful preference; truth of ground of collusive attachment does not validate unlawful preference.*—Attachments issued and levied by collusion between a debtor and certain of his creditors, followed by a deed of assignment by the debtor made in pursuance of a preconceived design thus to create preferences in favor of the attaching-creditors is void as to creditors, and becomes part and parcel of the general assignment; nor does the truth of the grounds of attachment validate the unlawful preferences sought to be obtained.

2. *General assignment; what passes under; not affected by recital in the deed that it is made subject to attachment liens, if in fact, none exist.* A general assignment which recites that it is made subject to the attachment liens of certain named creditors, and which is immediately thereafter followed by the levy of attachments by said named creditors, is not affected thereby, and the title to all the assets pass to the assignees for the benefit of all creditors.

3. *Corporations; insolvency.*—The mere insolvency of a corporation does not engraft a trust on its property in favor of its creditors.

4. *Creditors after assignment; when right of action in their own name accrues.*—After a general assignment has been made, a creditor has no right to file a bill to protect the trust funds, unless he avers that the assignees after due request have failed and refused to do so, or that they are guilty of dereliction of duty in the premises.

5. *Equity pleading; bill in double aspect; relief; demurrer.*—When a bill is filed in a double aspect both alternatives must entitle the complainant to the same relief; otherwise the bill is demurrable.

APPEAL from Montgomery Chancery Court.

Heard before Hon. J. N. WILLIAMS, Chancellor.

The bill alleges that Pollak Company, a corporation carrying on a mercantile business in the city of Montgomery, Alabama, having become insolvent and unable longer to conduct its business, executed a deed of assignment on January 8th, 1894, to W. K. Pelzer and Sig-

mund Roman. The deed of assignment undertook to convey to said assignees for the benefit of their creditors all the assets of the corporation, subject, however, to certain attachment liens therein recited. That at the time said deed was drawn up there were, in fact, no attachments issued, but that said Pollack Co. with the fraudulent intent to create a preference in favor of Cane, McCaffery & Co., H. B. Claflin & Co. and Josiah Morris & Co. entered into a collusive agreement with them by which said Pollak Co. was to withhold the delivery of said deed of assignment until said three named firms, who were large creditors of said corporation, could procure the issuance and levy of attachments for their respective debts; that said attachments were issued respectively at 8:15, 8:16, and 8:17 a. m. on January 8th, 1894, and immediately thereafter, to-wit, on the same day at 8:30 a. m. said deed of assignment was filed for record in the probate office of Montgomery county, all of which was done in pursuance of the said collusive agreement. The bill is filed by the Muscogee Manufacturing Co. as a creditor of Pollak Co. in its own behalf and in behalf of such other creditors as would make themselves parties and share in the expense of the suit. The bill was subsequently amended so as to aver that if orator is mistaken in his former allegations, then he says, that said deed of assignment was executed prior to the issuance of either of said attachments; or was executed afterwards in pursuance of a resolution of the board of directors of Pollak Co. adopted prior to the issuance of said attachments. The amendment also made W. R. Waller, as sheriff of Montgomery county, a party defendant. Pollak & Co., the attaching creditors, the assignees, and Waller as sheriff were made parties defendant. The prayer of the bill as amended was that said attachments, and said deed of assignment be treated as parts of the same transaction, and the whole be declared to constitute a general assignment for benefit of all the creditors of Pollak & Co., and that the preferences sought to be obtained by said attachments be declared void; that said attaching creditors be enjoined from intermeddling with, collecting or selling said trust property, and that in event said sheriff should sell the same under said attachments he be made to account for the proceeds.

[Pollak & Co. *et al.* v. Muscogee Manufacturing Co.]

F. M. Billing, one of the defendants, and a member of the firm of Josiah Morris & Co. interposed demurrers, substantially as follows : It is not shown by the bill of complaint that none of the grounds for said attachment. existed ; that the lien aquired by said attachment was created by law, and not by the act of Pollak & Co. ; that said bill bases the claim for relief on three inconsistent statements of facts, averred in the alternative, and one or more of them at least, even if true, give no right to relief ; it is shown by the bill that the legal title of the property sought to be subjected is in Pelzer and Roman, as assignees, and that said assignees have a complete and adequate remedy at law, and no ground is stated showing the necessity of the interposition of a court of equity in behalf of complainants. Sheriff Waller demurs on the ground, that he is not a proper party to the bill ; that he holds the property in controversy in his official capacity, and is not responsible to complainants for his action in the premises. Both Billing and Waller move to dismiss the bill for want of equity. The chancellor overruled the demurrers and the motions to dismiss the bill, and defendants appeal.

TOMPKINS & TROY, for appellants.—Where a bill alleges different grounds for relief in the alternative, if any one of the grounds is insufficient, the bill is demurrable.—Code of 1886 §§ 2929–33.

The levy of an attachment creates a lien.—Code, 1886, § 2957 and authorities cited.

The lien of an attachment is superior to the title conveyed by a subsequent assignment, though the latter was in contemplation prior to the levy of the attachment. *Meyer v. Conway* 90 Ala. 109 ; *Randolph v. Carlton*, 8 Ala. 606 ; *Holland v. Drake*, 29 Ohio St. 441 ; Drake on Attachment, § 224. These attachments can not be taken as part of the general assignment.—*Goodbar v. The Bank*, 78 Tex. 461, 475.

The fact that an insolvent corporation intends to devote its property to the payment of its debts, does not, in this state, convert it into a trust fund for the benefit of its creditors.—*O'Bear Jewelry Co. v. Volfer*, 106 Ala. 525 ; *Hollins v. Briarfeld Co.*, 150 U. S. 371.

CHILTON & THORINGTON, for appellee.—It is not neces-

sary to contend that a collusive attachment standing alone will operate as a general assignment for the benefit of creditors generally. Our contention is that where the attachment and general assignment are parts of one scheme to dispose of all the debtor's property, and at the same time to give a preference to the attaching creditor, the attachment and assignment will be construed together as one instrument, and the preference will be avoided.—*Rochester v. Armour*, 92 Ala. 432; *Spelman v. Friedman*, 54 Hun. (N. Y.) 409; *White v. Cotzhousen*, 129, U. S. 329; *Hyman v. Barmon*, 33 Pacif. Rep. 1076; *Presten v. Spaulding*, 18 Ill. App. 341; *Clapp v. Nordinger*, 25 Fed. Rep. 71; *Freund v. Yeager*, 26 Fed. Rep. 812; *Stein v. Levy*, 55 Hun. (N. Y.) 381, 385; *Jones v. Kellogg*, 33 Pac. Rep. 997; *Watkins Nat. Bank v. Sands*, 28 Pac. Rep. 618–620; *Bell v. Goetter, Weil & Co.* (present term),

A creditor may acquire a lien by an attachment and thus secure a preference, but he must pursue his legal rights independently of the aid of his debtor, *and under the responsibility of the bond required in such cases,*—*Crawford v. Kirksey*, 55 Ala. 282.

Under the circumstances of this case the debtor was precluded from suing on the attachment bond.

HEAD. J.—We think the case made by the original bill is not to be distinguished, in principle, from *Rochester v. Armour*, 92 Ala. 432. Its averments clearly implicate Pollak & Co. as aider and abettor in the issuance and levy of the attachments at a time when that company, having just resolved to immediately execute the general assignment, was proceeding to do so, resulting, in a few minutes after the attachments were levied, in its actual execution and delivery. The averments connect the two acts, in fact and intent, on the parts of both debtor and attaching creditors, as one transaction, had and completed for the purpose of securing, by a lien, to the attaching creditors, unlawful preferences of security over the general creditors who were to be provided for by the contemplated assignment. In such case, it is immeterial whether grounds of attachment existed or not. The statutory affidavit and bond, intended by the law for the protection of the debtor against wrongful attachments, were, in effect, waived by the debtor. Being actually made and given,

[Pollak Co. *et al.* v. Muscogee Manufacturing Co.]

they were, under the facts admitted by the demurrer
to be true, mere formalities, designed to give to the pro-
ceedings the color of *bona fide* assertions of lawful reme-
dies, while, in fact, they were intended to secure unlaw-
ful preferences.  The debtor, inviting the attachments,
would be afforded no redress upon the bonds, howsoever
clearly it might be able to show that no ground of at-
tachment actually existed.    The attachment law was
enacted for higher and better purposes, and cannot be
perverted to the accomplishment of such unjust and un-
lawful ends.    The intended security was, therefore, in
legal effect, attempted to be conferred by the voluntary
act of the debtor, and stands upon no higher ground
than any mortgage or other form of security it might
have given, under the same circumstances.    Under the
facts averred, the attachment and levies must be held to
constitute parts of the general assignment, as prayed
for.    And the same is true, under the facts averred in
reference thereto, as to the assignment of the choses in
action.

The bill, as amended, introduces, in the alternative,
three distinct grounds relied upon for relief :    1st. That
which we have already considered ; 2nd, that the as-
signment was executed before either of the attachments
was issued or levied, but, by its terms, the conveyance
to the assignees was made expressly subject to the liens
of the attachments in favor of the persons named ; and,
3rd, that the assignment was executed after the levies,
but pursuant to a resolution of the board of directors of
the assignor, made prior to the issuance of the attach-
ments, and while complainant's debt was a subsisting
demand against the assignor.    The resolution recited
(and the bill avers the same to be true) that the Pollak
Company was unable longer to carry on its business and
was insolvent.    The language of the first resolve, as it
is set out in the assignment, a copy of which is made an
exhibit to, and part of the amended bill, is as follows :
"Inasmuch as this corporation is unable to meet and
pay its liabilities now due and becoming due, and is in-
solvent and unable longer to carry on its business (its
stock in trade having been attached) that it do execute
a deed of general assignment for the benefit of its cred-
itors."    The second was :    "That Ignatius Pollak, the
president of the corporation, be and he is hereby author-

ized to execute a deed of general assignment in the name
of said corporation, to William K. Pelzer and Sigmund
Roman, in trust for all the creditors of this company,
conveying all its property of every kind and description
whatsoever."

Considering the second ground of relief, the case
thereby made may be thus stated : The board of direct-
ors of the debtor company, by resolution, declared its
purpose to make a general assignment for the benefit of
its creditors, and authorized its president to execute the
same to Pelzer and Roman. The president undertook to
exercise this authority, but, in framing the instrument,
he falsely recited therein, in substance, that Cane,
McCaffrey & Co., Josiah Morris & Co. and H. B. Claflin
& Co., had, that day, levied attachments upon the goods
of the debtor ; and his conveyance to the assignees, of
the debtor's property, was made expressly subject to the
liens of those attachments. The case made by this
phase of the bill, not only necessarily, but in express
words, excludes the idea that the assignment and attach-
ments were parts of one transaction—all constituting a
general assignment—or that the case was to be influ-
enced by any unlawful intent to create preferences, on
the parts of the debtor or attaching creditors. It is not
a bill to annul the assignment, as fraudulent, but the
validity of the instrument is affirmed, and sought to be
enforced. The question, then, presented is, what is the
effect, as to the rights of creditors, of an assignment, for
their benefit, of all the debtor's property, subject to the
liens of certain specified attachments declared, in the in-
strument, to have been levied upon the property, when,
in fact, no such attachments had been issued? The as-
signment, so far as the rights of the assignees are con-
cerned, must, like other conveyances, be construed, and
the intention of the parties determined, according to the
legal effect of its terms and any extrinsic facts to which
they refer, or which legitimately bear upon them. On
its face, its effect is, that the assignees took the general
legal title to the goods; the three attaching creditors
had liens upon them to the extent of their claims, and
the sheriff a special property and possession, for the
purpose of enforcing the liens. But, upon extrinsic
averment of a creditor, admitted by demurrer to be true,
no such liens, and no such special property and posses-

sion in the sheriff, existed. Where then was the posses-sion, and where the equitable interest in the goods, sub-ject to which the conveyance was said to be made? Does the extrinsic fact that the liens did not exist oper-ate to invest the assignees with the entire ownership, in view of the recitals and terms of the assignment, under which they take, or does it convey to them the legal title, and reserve to the assignor the possession and an equitable charge upon the goods to the extent of the amount of the claims of those creditors? It seems that an affirmative answer to one or the other of these inqui-ries is a necessary result; for, certain it is, that if the at-tachments had not been issued and levied, there could be no equitable interest or charge in favor of the sup-posed attaching creditors named in the assignment, and no possession or property in the sheriff; and no recital or stipulation of the assignment could confer such upon them. The liens or equitable interests, which the reci-tal of the conveyance excludes from its operation, and the possession of the goods, must reside somewhere. If they did not pass to the assignees, they, of necessity, re-mained in the assignor. What then is the effect, upon the equity of the bill, of either of these results? If the first is true, viz., that the entire interest passed to the assignees, it would seem that the assignment, in view of the fact that the recital and assumption therein of the existence of the liens, were a mistake, would be com-plete in itself, enabling the assignees to reduce to pos-session and administer the property; requiring no inter-vention of equity to perfect it, or to combine it with any other simultaneous disposition; and that complainant's remedy would be against the assignees when they come to settle their trusts. If the second be true, that the le-gal title only passed to the assignees, the said excepted liens or equitable interests, and the possession remain-ing in the assignor, the consequence would seem to be that the assignment is only a partial one. The excep-tion from its operation, of a substantial estate, subject to the claims of creditors, would deprive the instrument of the character of a general assignment. We are aware of no principle by which such an exception could be con-sidered a disposition of the excepted property, by the as-signor, which can be tacked to, and made a part of the conveyance, thereby converting the latter into a general assignment.

We are of opinion that the effect of the case stated is, that the entire property passed to the assignees, for the following reasons: That portion of the conveyance evidencing the grant is in itself a complete transfer of the entire property. The words following, to the effect that the grant is made subject to the liens of three specified attachments, is, in legal effect, but an exception from the grant, of such an equitable interest in the property as the liens mentioned create. In *Frank v. Myers*, 97 Ala. 437, we had occasion to discuss, somewhat fully, the subject of exceptions in deeds, and we there laid down the essential requisites of a valid exception. We found, in effect, that if for any legal reason, the exception was incapable of operation, the grant of the entire property was unaffected by it. As we said there, in reference to the exception then being considered, the principle is but the complement or resultant of the other principle that a deed delivered must have effect, if possible, and be taken most strongly against him who makes it. Now, in giving practical effect and operation to the exception expressed in the present assignment, the assignees must need ascertain and identify the particular attachments to which it refers, and thereby learn their scope and extent; for it is by these that the extent of the interests excepted is to be known and observed. In that investigation, they ascertain that the supposed existence of attachment liens is founded in error—that no such liens existed. The words of the exception expressed, are, then, founded upon a myth; they, therefore, refer to nothing. If the thing which the words describe be, in truth, *nothing*, because of the non-existence of the thing, there is, of course, nothing upon which the exception can operate. Here the grant is of the entire property; the mythical subtraction of *nothing* from it, leaves the grant entire. The words of the exception are: "subject to the lien of certain attachments levied upon it on the 8th day of January, instant, to-wit: Cane McCaffrey & Co., Josiah Morris & Co., H. B. Claflin & Co." It is not an arbitrary exception of an equitable interest to the extent of a specified sum, but, of such equitable entries as find support and existence in the levies of specified attachments; the existence of which levies is essential to the existence of the interests excepted. To determine what those interests are, we

[Pollak Co. *et al.* v. Muscogee Manufacturing Co.]

repeat, the assignees must look to the particular attachments. Proceeding to do so, they find that none such exist. The exception, therefore, referring to nothing, necessarily fails. To state an analogous case, suppose the exception had been of the interest of A. B. in a mortgage, executed to him, at a certain time, by the assignor, when in fact, no such mortgage had ever been executed; or, if executed, had been fully paid and discharged before the assignment. It seems clear to our minds that there would be nothing for the exception to operate upon, and that the grant would be unaffected by it.

What we have said is, at last, nothing more than a process of reasoning leading to the proposition, that the parties to the instrument intended, by the clause in question, no more than to declare, what the law already implied, that the property should pass to the assignees, subject to attachment liens, if any, which rested upon it. If there were, in fact, no such liens existing, it is clear the parties did not intend that an interest equal to that they would have represented, if they had existed, should be excepted from the conveyance. The resolution adopted by the board of directors, and the assignment itself, show, unmistakably, an intention to make a *general* assignment, reserving nothing to the assignor. As neither the law nor the assignment reserved anything to the three specified creditors, because they did not, in fact, have the specified liens, and as the intention of the assignor was to reserve nothing to itself, the result is that the whole passed to the assignees. The bill makes no complaint of the assignees. It seeks no relief against them for any abuse of their trust. It cannot be regarded as a bill against them for a settlement of their trust, independent of any special equity; for it is clear the trust is not ripe for settlement. As to the complaints against the sheriff for wrongful intermeddling, on his part, it is not shown why the assignees may not move for the necessary redress. They have not been requested to do so, nor to relinquish their right in that behalf to the complainants. They are charged with no dereliction, in the premises. There is no equity in the alleged ground of relief under consideration.

As to the third ground: We have no doubt the assignment did not take effect until its execution, so as to

cut off intervening liens or securities created between the assignor's declaration of its purpose to make an assignment and its actual execution ; such liens or securities, according to this ground of relief, not being created under such circumstances as to blend them with, and constitute them parts of, the assignment. The resolution of the board of directors was revocable at any moment before being carried into effect, and could create no vested right in the creditors to have it carried into effect. It was not an agreement with the creditors to execute a general assignment. The cases of *The John Stilletto Co. v. McConnell*, 130 Ind. 47, (26 N. E. Rep. 832), and *Wyeth Hardware Co. v. Standard Implement Co.*, 28 Pac. Rep. 171, properly interpretend, are not authories to the contrary. They but state, in another form, the general rule we have recognized, that dispositions for security, made by the assignor, pending the making of an assignment, under circumstances which constitute them, in substance and intent, parts of the assignment when executed, will be so treated. This court has heretofore repudiated the theory that mere insolvency of the corporation engrafts a trust upon its property in favor of creditors.—*O'Bear Jewelry Co. v. Volfer*, 106 Ala. 205.

Inasmuch as two of the alternative grounds of relief are thus found to be without equity, the demurrers should have been sustained on the grounds indicated by this opinion.—3 Brick. Dig., 378, § 183. An order will be here made reversing the decretal order of the chancellor, and sustaining the demurrers and remanding the cause. The bill may be amended within thirty days, with power in the chancery court, or chancellor, in vacation, to extend the time on sufficient showing.

Reversed, rendered and remanded.